Submitted December 3, 2010, reversed and remanded December 29, 2011

MAN-DATA, INC.,
an Oregon corporation,
dba Pacific Coast Credit,
*Plaintiff-Respondent,*

*v.*

B & A AUTOMOTIVE, INC.;
Cheryl Mulhall;
and Robert Gonzales,
*Defendants-Appellants.*

Lane County Circuit Court
120819153; A143845

270 P3d 318

Monty K. VanderMay and The VanderMay Law Firm filed the briefs for appellants.

Jeffrey I. Hasson and Davenport & Hasson, LLP, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Landau, Judge pro tempore.

ORTEGA, P. J.

.

## ORTEGA, P. J.

Defendants appeal from a general judgment awarding plaintiff damages and prejudgment interest, and from a supplemental judgment awarding attorney fees and costs. Plaintiff is a collection agency that sued defendants to recover legal fees charged pursuant to a fee agreement between defendant B & A Automotive, Inc. (B&A) and its former attorney, Scott Bassinger (Bassinger).[1] Defendant Gonzales and defendant Mulhall (the individual defendants), both of whom were associated with B&A, signed a guaranty that they, in their individual capacities, would pay legal fees incurred by B&A in the course of the representation. Defendants failed to pay all of the fees billed, and Bassinger assigned his claim to plaintiff for collection. After the trial court entered a default order against B&A for failure to appear by an attorney, the case proceeded to a bench trial against the individual defendants. At trial, the court prevented the individual defendants from attacking the validity of the fees charged under the fee agreement. The court found in favor of plaintiff and entered the general and supplemental judgments. In their appeal from those judgments, the individual defendants challenge the trial court's ruling that limited their ability to defend against the fees charged and the trial court's denial of post-trial motions for relief under ORCP 69 B and ORCP 71 B. We conclude that the trial court erred by limiting the individual defendants' ability to defend the claim, and, accordingly, we reverse and remand the judgment and the supplemental judgment.[2]

The following facts are undisputed. Gonzales, acting in his capacity as B&A's president, signed a fee agreement retaining Bassinger to represent B&A in a legal dispute. Gonzales and Mulhall also signed, in their individual capacities, a provision in the contract that stated:

> "The undersigned, Robert Gonzales and Cheryl Mulhall, hereby guarantees [*sic*] the full, prompt and complete performance of B & A Automotive Inc. as if the undersigned

---

[1] We refer to both Scott Bassinger, P.C. and Scott Bassinger individually as Bassinger throughout this opinion for ease of reference.

[2] Our resolution of that issue obviates the need to address defendants' other assignments of error, and we decline to do so.

was [*sic*] B & A [Automotive] Inc. of all the terms and conditions contained in this Fee Agreement and the undersigned hereby expressly waives [*sic*] notice of acceptance of this guarantee and of all defaults by B & A Automotive Inc. and of nonpayment and nonfulfillment of any and all indebtedness, liabilities and obligations of this Fee Agreement."

The relationship between Bassinger and defendants soured, and defendants failed to pay the entire sum charged by Bassinger for legal services. Bassinger assigned his claim for the unpaid balance to plaintiff for collection. Plaintiff then filed a complaint alleging that B&A had breached the fee agreement and that Mulhall and Gonzales were personally indebted to plaintiff for the unpaid balance because of the guaranty.

Gonzales, acting *pro se*, filed an answer on behalf of all of the defendants. In the meantime, plaintiff's action was referred to mandatory arbitration. The arbitrator eventually entered an award in plaintiff's favor. Defendants filed a notice of appeal from the award and requested a trial *de novo*.

After arbitration and the trial *de novo* request, plaintiff moved to strike the answer filed by Gonzales on behalf of B&A, asserting that B&A had failed to appear by an attorney as corporate entities are required to do under ORS 9.320. Plaintiff also sought an order of default against B&A. Defendants opposed plaintiff's motion, arguing that a closely held corporation can appear *pro se*. The trial court disagreed, struck the answer as to B&A, and entered a default order against B&A. The case proceeded to trial against the individual defendants.

During pretrial arguments on the day of trial, the court held an extended colloquy to sort out various issues that remained pending. We recount that colloquy in some detail because it provides important context. First, as a housekeeping matter, the trial court allowed the individual defendants to file an amended answer[3] and three

---

[3] The record reflects that the court originally granted the individual defendants leave to file an amended answer some months before trial and that they served plaintiff with an amended answer, but failed to file it with the court. The court again allowed the amended answer during pretrial arguments on the day of the trial.

affirmative defenses." The individual defendants' first two affirmative defenses asserted that Bassinger's legal representation was below the standard of care and in breach of the fee agreement, and sought damages resulting from that conduct. Defendants' third affirmative defense asserted that they had paid all sums owed to Bassinger. In response, plaintiff moved to strike the amended answer and the first two affirmative defenses, and sought several evidentiary rulings *in limine*. Of central importance to this case, plaintiff sought a ruling that defendants could not introduce evidence at trial related to whether B&A owed the attorney fee bill or evidence "contrary to the admitted amount because default has been entered against B&A." Plaintiff argued that, because an order of default was entered against B&A, the total sum due under the fee agreement was established as a factual matter and the individual defendants could not challenge that amount. In other words, plaintiff contended that because B&A was in default, it was liable for the debt and the only issue before the court was whether the individual defendants entered into the guaranty. Plaintiff argued that, because the individual defendants signed the guaranty, B&A's default made them liable for any unpaid balance.

The trial court denied plaintiff's motion to strike the amended answer but struck the first two affirmative defenses for improperly seeking damages from Bassinger, who was not a party. That ruling is not challenged on appeal. The court also granted plaintiff's request to prevent the individual defendants from presenting "evidence contrary to [B&A] owing the attorney fee bill, and contrary to the admitted amount because default has been entered against B&A." The court ruled that the only issue at trial was the amount owed to plaintiff. That is, defendants could dispute how much of the bill they had paid, but could not challenge the total amount charged by Bassinger.

After ruling on additional evidentiary matters, the court questioned whether there remained an issue as to whether the individual defendants had signed the guaranty. Gonzales and Mulhall admitted that they had signed the guaranty but contended that they, as guarantors, had the right to defend against the bill. The court responded that

"[t]he way in which this case has been postured and the way in which it has evolved does not provide the guarantors in this case, because Mr. Bassinger I think is also not a party to this case, to pursue the question of reasonableness of the bill and whether the amounts were paid or not."

When Gonzales stated, "I don't understand why the guarantors can't defend the bill[,]" the court replied that it was

"not going to get into a discussion about how the legal process works to get to the point that we are in, but based on the representations during your statements, and there being no dispute about the—whose signatures are on [the guaranty], which is the fee agreement contract with * * * Bassinger, that issue is not in dispute."

The court further explained that the only remaining dispute was over how much of the bill was actually paid by defendants, not whether the total amount charged by Bassinger was appropriate. At that point, defendants waived their right to a jury trial, and the case proceeded to a bench trial.

Plaintiff called Bassinger to testify as to the amounts billed and received as payment. In addition, plaintiff made an offer of proof, through Bassinger's testimony, as to the reasonableness of the fees charged. The court allowed defendants to cross-examine Bassinger during the offer of proof about the reasonableness of the fees. Otherwise, though, the court prevented the individual defendants from offering testimony that challenged the amounts charged by Bassinger.

After the bench trial, the court entered a general judgment awarding plaintiff $7,512.50 in unpaid fees and $5,023.40 in prejudgment interest. The court also entered a supplemental judgment awarding attorney fees and costs to plaintiff.

After entry of those judgments, defendants, now represented by an attorney, filed a motion for relief from judgment under ORCP 71 B, a motion to set aside the default under ORCP 69 B, and a motion for a new trial under ORCP 64. The court denied the motions, and defendants appealed,

assigning error to the trial court's limitation of the issues at trial, as well as the trial court's denial of defendants' post-trial motions for relief from judgment, to set aside the default, and for a new trial.

Defendants' first assignment of error challenges the trial court's ruling that denied the individual defendants "the right to put on any defense or evidence except as to amounts paid to [p]laintiff." The individual defendants maintain that, under Oregon law, the entry of default against B&A does not preclude them from defending the claim against B&A in their capacity as guarantors. They assert that, consequently, the court erred when it restricted their ability to challenge the amount of fees charged by Bassinger. Because the trial court precluded the individual defendants from making such a challenge, they contend that they were not allowed to put on their case and the only proper remedy is a remand for a new trial.

Plaintiff makes two responses. First, although not entirely clear, plaintiff appears to argue that the individual defendants were allowed to present evidence on the issue of the amounts charged during plaintiff's offer of proof. Second, plaintiff contends that the default order against B&A resulted in the admission of all allegations against B&A. According to plaintiff, then, because B&A defaulted and did not challenge plaintiff's complaint, the court correctly concluded that evidence contrary to B&A owing the attorney fees billed should be excluded. Plaintiff cites *State ex rel Nilsen v. Cushing*, 253 Or 262, 453 P2d 945 (1969), for the proposition that a default order results in the admission of all allegations against the obligor and cites *Valencich v. TMT Homes*, 193 Or App 47, 88 P3d 300 (2004), for the proposition that a judgment against a principal obligor is binding on the surety when liability of a surety is dependent on the outcome of litigation in which the principal is involved.

We begin our analysis by labeling the parties in this case with the nomenclature of surety and guaranty law.[4]

---

[4] Although the parties use the terms surety and guarantor interchangeably, those terms are historically distinct. *See* Laurence P. Simpson *Handbook on the Law of Suretyship* 6, 8-10 (1950). To avoid confusion, we adopt the "broader" definition of surety for use in this opinion:

Plaintiff here, pursuant to B&A's obligations in the fee agreement and Bassinger's assignment of his claim, is the obligee. B&A, by way of the underlying obligation in the fee agreement, is the principal obligor. The individual defendants, through their guaranty, are the secondary obligors or sureties.

Initially, we note that the cases relied on by plaintiff do not directly address the issue presented by the trial court's ruling as we understand it—that is, whether the individual defendants, as sureties, were properly precluded from defending against the fees charged. The statement in *Nilsen* that allegations are admitted against a defaulting party only touches the liability of the defaulting party; it does not explain the effect that default has on a surety of the defaulting party. *See* 253 Or at 263-66. And *Valencich* arose in the context of litigation bonds, where the surety's obligation was a separate contract in which the surety agreed to pay whatever the obligor was adjudged to owe in the litigation. 193 Or App at 54-55. Therefore, the basis of the obligation in *Valencich* fundamentally differs from that at issue here— that is, where the obligation of the individual defendants arose from the original contract and was not entered into as a result of litigation.

---

"A surety, in the broad sense, is one who is liable for the debt or obligation of another, whether primarily or secondarily, conditionally or unconditionally. In other words, the term surety includes anyone who is bound on an obligation which, as between himself and another person who is bound to the obligee for the same performance, the latter obligor should discharge. * * * By such terminology, guarantors and indorsers are kinds of sureties."

*Id.* at 6.

Further:

"A surety, in the narrow sense, is one who is liable in form primarily on the debt or obligation of another. His obligation is accessorial to that of the principal debtor, but it is direct and not conditioned on the principal debtor's default. In this sense, suretyship differs from guaranty and indorsement, which are conditional, secondary obligations.

"* * * * *

"A guarantor is one who promises either that another will perform his duty, or that, if another does not perform his duty, he will, nonperformance by the other being a condition precedent to the guarantor's duty to pay."

*Id.* at 8-10.

The legal question here is whether the law precludes the individual defendants from challenging the amount of the obligation incurred by B&A. As a general rule, with exceptions that do not apply to this case, "the secondary obligor may raise as a defense to the secondary obligation any defense of the principal obligor to the underlying obligation[.]" *Restatement (Third) of Suretyship and Guaranty* § 34(1) (1996). As applicable here, that rule indicates that the individual defendants, as sureties, may raise defenses available to B&A in an action seeking to hold the individual defendants liable as sureties. *See also* Richard A. Lord, 23 *Williston on Contracts* 61:7 (4th ed 2002) ("The general rule is that the surety is not liable to the creditor unless the principal obligor is liable; thus, the surety may plead the defenses that are available to the principal."). That is so even though a default order was entered against B&A. *Kliks v. McCaffrey*, 221 Or 81, 350 P2d 417 (1960) (concluding that where default is entered against the principal, the facts alleged to be the basis of the obligation have never been subject to real inquiry and judgment is only *prima facie* evidence against the surety of the principal's obligation). *See also Becker v. Pieper*, 176 Or App 635, 644, 32 P3d 912 (2001) (noting circumstances where a judgment entered in favor of a nondefaulting codefendant would necessarily apply to a defaulting codefendant with the same force and effect); ORCP 67 E(2) (stating in part, that default against less than all parties in an action against parties jointly indebted does not preclude a judgment in the same action in favor of the remaining parties).

Both plaintiff and the trial court appeared to place some significance on the fact that Bassinger assigned his claim to plaintiff. However, plaintiff has not pointed to any authority, nor are we aware of any, that the assignment of a claim to a collection agency affects the general rule stated above. That is, the individual defendants' ability to defend against B&A's obligation is not limited by the assignment of the claim to plaintiff. Consequently, the trial court erred in limiting the individual defendants' ability to defend against the fees charged by Bassinger.

Plaintiff, however, appears to argue that its own offer of proof somehow defeats defendants' first assignment of error. As noted, Bassinger testified during the offer of proof

that the fees were reasonable, and defendants were given the opportunity to cross-examine him on that point. However, plaintiff has not presented any cogent argument as to why an offer of proof in this manner would allow us to affirm the trial court's decision to preclude the individual defendants from presenting their own evidence challenging the amount of the fees.[5]

Reversed and remanded.

---

[5] The trial court, at least ostensibly, denied the individual defendants the opportunity to challenge the fees due by excluding any evidence in support of that defense. In general, to preserve error relating to the exclusion of evidence, a party must make an offer of proof. *State v. Affeld*, 307 Or 125, 128, 764 P2d 220 (1988). However, when a trial court "excludes an entire class of evidence by declaring, in advance, that it is inadmissible as a matter of law, the ruling renders a further offer futile." *State v. Olmstead*, 310 Or 455, 461, 800 P2d 277 (1990). In such cases, an offer of proof to preserve error is not required. *Id.* We conclude that this is such a case where an offer of proof was not required to preserve defendants' claimed error.