Argued and submitted May 17, general and supplemental judgments reversed and remanded December 18, 2019

STATE OF OREGON,
by and through its
Business Development Department,
*Plaintiff-Appellant,*

*v.*

Samuel HUTTENBAUER, Jr.,
an individual,
*Defendant-Respondent.*

Samuel HUTTENBAUER, Jr.,
an individual,
*Third Party Plaintiff,*

*v.*

OREGON STATE UNIVERSITY
and Robert McGorrin,
*Third Party Defendants.*

Marion County Circuit Court
17CV20969; A167342

456 P3d 340

Plaintiff appeals an order denying plaintiff's motion for summary judgment and granting defendant's motion for summary judgment. Plaintiff loaned money to defendant's company, and defendant guaranteed the loan in his personal capacity. Plaintiff brought this action to enforce that guaranty after the company defaulted on the loan. Defendant argued that the action to enforce the guaranty was time barred, and, alternatively, that the contract was avoidable, because defendant had been fraudulently induced to enter it. The trial court concluded that plaintiff's action was time barred because the guaranty was a negotiable instrument under ORS 73.0104, and therefore the claim to enforce the guaranty was subject to the limitation periods in ORS 73.0118, which had run. *Held*: The trial court erred in concluding that the guaranty was a negotiable instrument. A negotiable instrument must be, among other things, an unconditional promise to pay. The guaranty in this case was expressly conditioned on defendant's company defaulting on the loan. Because it was a conditional promise to pay, the guaranty was not a negotiable instrument and therefore the state's action to enforce the guaranty was not barred by the limitation periods in ORS 73.0118. Furthermore, there was no issue of material fact regarding defendant's fraud-in-the-inducement defense, and plaintiff was entitled to judgment on that defense as a matter of law. Therefore, the trial court erred in granting defendant's motion for summary judgment and in denying plaintiff's motion for summary judgment.

General and supplemental judgments reversed and remanded.

Courtland Geyer, Judge.

Christopher Page, Assistant Attorney General, argued the cause for appellant. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Shayna M. Rogers, argued the cause for respondent. Also on the brief were J. Michael Keane and Garrett Hemann Robertson PC.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

ARMSTRONG, P. J.

General and supplemental judgments reversed and remanded.

**ARMSTRONG, P. J.**

Plaintiff, State of Oregon, through its Business Development Department, loaned money to defendant's company, High Pressure Research, LLC (HPR).[1] Defendant personally guaranteed the loan as the sole member of HPR. Plaintiff brought this action against defendant to enforce defendant's guaranty after HPR defaulted on the loan. The parties subsequently filed cross-motions for summary judgment. Defendant argued in his motion that the action was time barred, because the guaranty is a negotiable instrument under ORS 73.0104 and, therefore, plaintiff's claim to enforce the guaranty was subject to the limitation periods in ORS 73.0118,[2] which had run. The trial court granted defendant's motion after concluding that the guaranty was a negotiable instrument, that the ORS 73.0118 limitation periods applied to plaintiff's claim, and that plaintiff's action was therefore time barred. The court accordingly also denied plaintiff's motion for summary judgment and entered a judgment that dismissed plaintiff's guaranty claim.

Plaintiff appeals the judgment of dismissal, assigning error to the trial court's rulings granting defendant's motion for summary judgment and denying plaintiff's motion. Plaintiff also appeals a subsequent supplemental judgment awarding defendant attorney fees and costs.

Plaintiff contends that the trial court erroneously concluded that the guaranty is a negotiable instrument. As a matter of first impression, we agree with plaintiff that the guaranty is not a negotiable instrument as defined in ORS 73.0104 and is therefore not subject to the limitation periods in ORS 73.0118. We also conclude that the trial court erred in denying plaintiff's motion for summary judgment, because there was no dispute of material fact on plaintiff's

---

[1] The agency was known as the Oregon Economic and Community Development Commission at the time that it made the loan to HPR. The Oregon legislature renamed the agency in 2009 as the Oregon Business Development Department. Or Laws 2009, ch 830, § 8(5). We use the current name in this opinion.

[2] ORS 73.0104 is the Oregon codification of Uniform Commercial Code (UCC) 3-104, defining "negotiable instrument," and ORS 73.0118 is the codification of UCC 3-118, setting limitation periods applicable to actions to enforce negotiable instrument payment obligations.

claim, and defendant failed to establish that there was a triable issue of fact on defendant's affirmative defense of fraud in the inducement. Consequently, plaintiff was entitled to judgment as a matter of law. Hence, we reverse and remand.

The Business Development Department makes loans to start-ups, early-stage companies, and small businesses. *See* ORS 285B.053. In 1998, plaintiff loaned $69,500 to HPR to purchase equipment for HPR to use to preserve and package foods using high-pressure treatment. To document that loan, plaintiff and HPR executed a promissory note and a loan agreement. The loan agreement stated that the equipment would be stored at Oregon State University (OSU). Defendant signed both the promissory note and the loan agreement in his capacity as the chief financial officer of HPR. Under the terms of the promissory note and the loan agreement, HPR was to make 48 consecutive monthly payments beginning one month after the loan funds were disbursed and to pay any remaining balance on April 30, 2002. The promissory note specified that, in the event of default, "the entire unpaid principal balance of, and all unpaid accrued interest on, this Note may be declared to be immediately due and payable in the manner, upon the conditions and with the effect provided in the Loan Agreement."

As a condition precedent to the disbursement of funds under the loan, the loan agreement required defendant to sign a "continuing, unconditional guaranty" of the HPR loan. Another clause in the loan agreement provided that "[n]o failure on the part of Lender to exercise, and no delay in exercising, any right, power, or privilege under this Agreement shall operate as a waiver thereof."

As required by the loan agreement, defendant signed a guaranty agreement guarantying "payment of the existing and future indebtedness" of HPR to plaintiff. The guaranty expressly referenced the loan agreement in its recitals. The guaranty further stated:

> "Guarantor guarantees prompt repayment when due of all amounts advanced in the past, or to be advanced in the future, by Creditor to Debtor, including but not limited to all amounts advanced or to be advanced under the Loan Agreement and the other Loan Documents. If

Debtor defaults in the payment of any such indebtedness, Guarantor will pay to Creditor or its order on demand, in any coin or currency that is legal tender in the United States at the time of payment, the amount(s) due.

"Guarantor also guarantees prompt and satisfactory performance by Debtor of all of the terms and conditions of the Note, Loan Agreement or other Loan Documents. If Debtor defaults in performance of its obligations under said Note, Loan Agreement or other Loan Documents, Guarantor shall pay to Creditor, in addition to the outstanding loan balance owed to Creditor by Debtor plus all unpaid accrued interest thereon, all damages, costs, and expenses that Creditor is entitled to recover from Debtor by reason of such default(s).

"Guarantor also shall pay to Creditor or its order on demand reasonable attorney fees and all costs and other expenses incurred by it in collecting the guaranteed indebtedness from Debtor or in enforcing this guaranty against Guarantor."

The guaranty also included a clause stating that defendant would not be released from liability due to "[a]ny neglect, delay, omission, failure, or refusal of [plaintiff] to take or prosecute any action for the collection of the Note."

HPR made no payments on the loan before the dissolution of HPR in 2002. Defendant, in his personal capacity, made payments to plaintiff of $200 each in December 2002 and January 2003.

Plaintiff brought this action in May 2017 to enforce the guaranty against defendant. In his answer, defendant admitted that HPR had failed to make any payments on the loan, but he alleged that he was not obligated to pay plaintiff under his guaranty because OSU had assumed the loan obligation by taking control of the equipment and refusing to allow HPR to use it. Defendant also alleged that plaintiff's claim was barred by the limitation periods in ORS 73.0118.[3]

---

[3] ORS 73.0118(1) provides:

"Except as provided in subsection (5) of this section, an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date."

In addition, defendant raised the affirmative defense of fraud in the inducement as a defense to plaintiff's action, alleging that plaintiff had loaned HPR the money as part of a fraudulent scheme to get defendant to buy the equipment for OSU. That is, defendant alleged that plaintiff had made the loan to HPR as part of a fraudulent scheme to induce defendant to agree to the guaranty and thereby make him personally responsible to pay for equipment acquired for OSU rather than for HPR.

Plaintiff moved for summary judgment on its guaranty claim, noting that defendant had conceded that HPR had defaulted on its loan obligations and that defendant had personally guaranteed payment of those obligations in the event of a default. In response, defendant raised two defenses: Defendant contended (1) that plaintiff's action was time barred, and (2) that defendant had been fraudulently induced to enter the agreement.

Defendant also filed a cross-motion for summary judgment on his defense that the action was time barred. Defendant contended that the guaranty—either by itself or as a part of a single agreement consisting of all the loan documents considered together—was a negotiable instrument and therefore was subject to the limitation periods in ORS 73.0118(1). Plaintiff, in its response to defendant's cross-motion, argued that statutes of limitation generally do not apply to the state and that the limitation periods in ORS 73.0118(1)—which defendant identified in his motion as applying to the guaranty—did not apply to bar plaintiff's claim in this case because the guaranty was not a negotiable instrument.  In addition, plaintiff argued that ORS 73.0118(1) did not bar the claim because, even if those limitation periods could apply to plaintiff, defendant had waived that defense under the terms of the guaranty.

The trial court concluded that the guaranty was a negotiable instrument and that the limitation periods in ORS 73.0118 operated to bar plaintiff's claim. Accordingly, it granted defendant's motion for summary judgment and denied plaintiff's motion. The court did not address the fraud defense that defendant had also raised in response to plaintiff's motion for summary judgment because the court

concluded that the issue was moot as a result of the court's ruling in defendant's favor on the limitations issue, and the court was "not prepared * * * to say whether or not there is a dispute of material" fact regarding the fraud defense. This timely appeal followed.

On review of cross-motions for summary judgment, when there are no disputes of fact, we review the trial court's rulings to determine whether either party is entitled to judgment as a matter of law. *Bergeron v. Aero Sales, Inc.*, 205 Or App 257, 261, 134 P3d 964, *rev den*, 341 Or 548 (2006).

Because it would be dispositive, we begin by considering whether the trial court correctly concluded that the action was time barred, which was the ground on which the trial court both granted defendant's motion for summary judgment and denied plaintiff's motion. As defendant acknowledges, "general statutes of limitations do not run against the government unless the statute" expressly provides otherwise. *Shasta View Irrigation Dist. v. Amoco Chemicals*, 329 Or 151, 159, 986 P2d 536 (1999); ORS 12.250.[4] Defendant contends that ORS 73.0118(1) is a statute that expressly applies a limitation period to the state. Because the limitation periods specified in ORS 73.0118(1) apply only to actions brought to enforce negotiable instruments, an initial question is whether the guaranty is a negotiable instrument. That question is a matter of statutory construction involving ORS chapter 73, Oregon's codification of the UCC article on negotiable instruments.

A negotiable instrument is defined for purposes of chapter 73 as a written order or promise of payment that is (1) unconditional; (2) for a "fixed amount of money, with or without interest or other charges"; (3) that is "payable to bearer or to order"; (4) payable "on demand or at a definite time"; and (5) "[d]oes not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money." ORS

---

[4] The Oregon Supreme Court has explained that the "sound reason for the rule is found in the fact that as a matter of public policy it is necessary to preserve public rights, revenues and property from injury and loss by the negligence of public officers." *State Land Board v. Lee*, 84 Or 431, 434, 165 P 372 (1917).

73.0104(1);[5] *see* UCC § 3-103 cmt 1 (2002). Oregon appellate courts have not previously determined whether a guaranty is a negotiable instrument. Because the Oregon Legislative Assembly adopted the UCC with the goal of establishing "a uniform and comprehensive set of commercial statutes," we look to the intentions behind the UCC when construing its provisions. *Security Bank v. Chiapuzio*, 304 Or 438, 445, 445 n 6, 747 P2d 335 (1987), *abrogated by statute on other grounds as recognized in Bedortha v. Sunridge Land Co., Inc.*, 312 Or 307, 314 n 4, 822 P2d 694 (1991).

> "The legislative intent behind the UCC can \*\*\* be derived from the language of the statute itself and the language of the comments. In addition, the legislative intent to make the UCC a uniform code makes relevant the decisions of other courts that have examined these questions and the discussions of the questions by scholars in the field, especially those scholars who participated in drafting the UCC."

*Id.* at 445 n 6.

Plaintiff contends that the guaranty here is not a negotiable instrument because it is not an unconditional promise to pay, and it is not for a fixed amount. We need not address the latter argument because we agree that the guaranty in this case is not an unconditional promise.

A promise to pay is not unconditional if it states "an express condition to payment" or "that the promise or order is subject to or governed by another writing." ORS 73.0106(1). Here, the guaranty states "[*i*]*f Debtor defaults in the payment of any such indebtedness*, [defendant] will pay to [plaintiff] \*\*\* the amount(s) due." (Emphasis added.) That

---

[5] ORS 73.0104(1) provides, as relevant:

"'[N]egotiable instrument' means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

"(a) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

"(b) Is payable on demand or at a definite time; and

"(c) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money[.]"

language expressly conditions defendant's responsibility to pay on HPR's default. Because defendant would have to pay the amount due only if HPR defaults, the guaranty includes an express condition to payment and therefore is not a negotiable instrument. That conclusion is supported by decisions by courts in other states and by legal scholars, who have concluded that guaranty agreements are not within the scope of Article 3 of the UCC—the article on negotiable instruments. *See, e.g.*, *Prime Financial Group, Inc. v. Smith*, 137 NH 74, 76, 623 A2d 757 (1993) (although the guaranty "unconditionally" guaranteed payment, it was not a negotiable instrument because the promise to pay was conditioned on the principal debtor's default); *see also Guaranty*, 38 Am Jur 2d § 16 at 883-84 (1999) ("Contracts of guaranty are not negotiable instruments. This is so because a guaranty is, by its very nature, a conditional promise to pay only on the condition that the principal debtor fails to pay." (Footnote omitted.)); Peter A. Alces, 2 *Uniform Commercial Code Transaction Guide* § 16:2 (2019 Update) (UCC Article 3 does not apply to "guaranties which are documented separately from the commercial paper which evidences the payment liability of the primary obligor").

Defendant next contends that, if the guaranty itself is not a negotiable instrument, the guaranty should be considered to be a part of the entire loan agreement, which defendant contends is a negotiable instrument. Defendant further contends that we should adopt either the "ancillary" test or the "known participant" test for determining whether a guaranty can be considered to be part of a larger, negotiable instrument. Under those tests, the guaranty need not itself be negotiable. Plaintiff counters that we should adopt the test that has been adopted in the majority of jurisdictions, which requires that negotiability be determined from the four corners of the purportedly negotiable instrument. We agree with plaintiff and adopt the four-corners test.

The chief purpose of Article 3 of the UCC "is [to grease] the wheels of commerce by establishing clear, practical rules governing negotiable instruments, so that subsequent parties (after the negotiation) know their rights." *Venaglia v. Kropinak*, 125 NM 25, 37, 956 P2d 824 (1998). Article 3 is meant to encourage the "inquiry-free transfer"

of negotiable instruments. *Id.* (quoting Ellen A. Peters, *Suretyship Under Article 3 of the Uniform Commercial Code*, 77 Yale LJ 833, 877 (1968)). "With certain limited exceptions, a promise or order is deemed to be conditional, therefore making the instrument not negotiable, when the instrument requires reference to another writing to determine the rights of the parties." David Frisch, 5A *Lawrence's Anderson on the Uniform Commercial Code* § 3-106:7 [Rev.] (3d ed, 2018 Update). That is so because "the holder of a negotiable instrument should not be required to examine another document to determine rights with respect to payment." UCC § 3-103 comment 1 (1992).

Adopting defendant's proposed tests—allowing parties to identify various elements of negotiable instruments across multiples writings—would require a potential purchaser of the resulting instrument to examine all other associated writings to determine what the holder's rights would be. Specifically, the guaranty in this case would require a prospective purchaser to look to the loan agreement to determine the terms of default, and then to investigate extrinsic facts to determine if those terms had been met, before being able to calculate the value of the guaranty. Such requirements would be inconsistent with the intention behind Article 3 because they would unduly burden the transferability of an instrument. Hence, we conclude that the four-corners test best accords with the intention behind UCC Article 3.[6]

---

[6] The adoption of a test that has been widely adopted in other jurisdictions is also consistent with the legislative intention in enacting the UCC to join in the creation of a uniform system of commercial laws. The four-corners test has been adopted in many other jurisdictions in construing UCC Article 3. *See, e.g.*, *Holsonback v. First State Bank of Albertville,* 394 So 2d 381, 383 (Ala Civ App 1980), *cert den*, 394 So 2d 384 (Ala Sup Ct 1981) ("Negotiability is determined from the face, the four-corners, of the instrument without reference to extrinsic facts."); *First State Bank at Gallup v. Clark*, 91 NM 117, 119, 570 P2d 1144 (1977) ("[I]t is clear that in order to determine whether an instrument meets [the requirements of UCC § 3-104] only the instrument itself may be looked to, not other documents, even when other documents are referred to in the instrument."); *First Fed. S & L v. Gump & Ayers R. Estate*, 771 P2d 1096, 1097 (Utah Ct App), *cert den*, 776 P2d 916 (Utah 1989) ("When determining negotiability, only the instrument in question should be examined."); *Bucci v. Northwest Trustee Services, Inc.*, 197 Wash App 318, 329, 387 P3d 1139 (2016), *rev den*, 188 Wash 2d 1012 (2017) ("Negotiability is determined from the face, the four corners, of the instrument at the time it is issued without reference to extrinsic facts.").

Finally, defendant contends that, if the trial court erred in concluding that the guaranty was a negotiable instrument, we should nonetheless affirm the trial court's grant of summary judgment to defendant under a suretyship theory, which he did not raise below in either his motion for summary judgment or his response to plaintiff's motion. Defendant contends that he is liable for HPR's debt as a surety and, therefore, that he could raise any defense that HPR could have raised to its obligation on the note. *See Restatement (Third) of Suretyship and Guaranty* § 34(1) (1996) ("[T]he secondary obligor may raise as a defense to the secondary obligation any defense of the principal obligor to the underlying obligation."); *see also Man-Data, Inc. v. B & A Automotive, Inc.*, 247 Or App 429, 437, 270 P3d 318 (2011) (citing *Restatement (Third) of Suretyship and Guaranty* § 34(1) (1996) with approval).

Acknowledging that he did not raise the theory below, defendant asks that we affirm the trial court's conclusion on the "right for the wrong reason" principle. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659, 20 P3d 180 (2001). We may, in our discretion, affirm a trial court's conclusion on an alternative basis if certain preconditions are met. *Id.* Specifically, we must determine

> "(1) that the facts of record be sufficient to support the alternative basis for affirmance; (2) that the trial court's ruling be consistent with the view of the evidence under the alternative basis for affirmance; and (3) that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below. In other words, even if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance."

*Id.* at 659-60 (emphasis in original).

Plaintiff responds that we should not exercise our discretion to affirm the trial court's conclusion on the proffered alternative basis because, among other things, plaintiff would have created a different record below to counter

the surety defense if defendant had raised it. Specifically, plaintiff contends that it would have developed the record below to show that defendant had consented to plaintiff's inaction or had waived the statute of limitations defense through a clause in the guaranty. *See Restatement (Third) of Suretyship and Guaranty* § 48 (1996) ("The secondary obligation is not discharged pursuant to * * * [the running of a statute of limitation as to the underlying obligation] * * * to the extent that, in the contract creating the secondary obligation or otherwise, the secondary obligor * * * waives such discharges."). Because we agree that the record on appeal would likely be different had defendant raised the surety argument below, we will not affirm the trial court's order on the proffered alternative basis. *See Eklof v. Steward*, 360 Or 717, 736, 385 P3d 1074 (2016) ("That criterion [a materially equivalent record] is of particular importance where, as here, the opposing party had no reason to adduce evidence on an issue that was not raised in the summary judgment motion.").

In sum, the action at issue here is not an action on a negotiable instrument. Hence, it is not subject to the limitation periods in ORS 73.0118. Plaintiff is not subject to general statutes of limitation, and defendant has not identified any other statute that would apply to bar plaintiff's action. Hence, the trial court erred by granting defendant's motion for summary judgment on the limitation ground raised in defendant's motion.

As we have explained, plaintiff also has assigned error to the trial court's order denying plaintiff's motion for summary judgment. The court did so expressly on the same ground on which it granted defendant's motion—that the action was time barred. We have concluded that that ruling was erroneous. However, defendant raised below a second argument against summary judgment for plaintiff: He argued that summary judgment in favor of plaintiff was foreclosed because he had raised issues of fact concerning his defense of fraud in the inducement.[7] To prevail on that

---

[7] Although plaintiff was the moving party, defendant had the burden of producing evidence of fraud because fraud in the inducement is an affirmative defense for which defendant would have the burden of persuasion at trial. *See* ORCP 47 C.

argument, defendant had to offer admissible evidence creating a genuine issue of material fact regarding the elements of fraud. *See Davis v. County of Clackamas*, 205 Or App 387, 394, 134 P3d 1090, *rev den*, 341 Or 244 (2006). Consequently, only a legal question remains: whether the record on summary judgment, viewed in the light most favorable to defendant, is sufficient to create a triable issue of fact on each element of his defense of fraud in the inducement.

The day before the hearing on the cross-motions for summary judgment, defendant filed a supplemental memorandum to support his fraud defense. In that memorandum, defendant relied on several documents that he had obtained through discovery. In those documents, OSU officials indicated that the OSU Department of Food Science and Technology faced "major financial challenges" at the time that plaintiff and HPR entered into the loan agreement that funded HPR's purchase of equipment. OSU further acknowledged that it had collaborated with HPR "to study, develop and manufacture foods preserved through the use of high pressure." Several years after HPR purchased the equipment, the professor at OSU who had been using the HPR equipment said that the timing of the loan agreement allowed OSU to complete a large contract that it had entered into with the United States Department of Defense, and that OSU continued to generate income through its use of the equipment. The final document that defendant provided was an email from the loan officer supervising the loan between plaintiff and HPR. In that email, the officer said that HPR had defaulted on the loan, but plaintiff had not yet foreclosed on the security for the loan and liquidated the collateral because a state agency was using the equipment and continuing to benefit from its use. According to defendant, those documents showed the existence of a scheme to defraud defendant by inducing him to purchase equipment for the state's benefit.

A party can avoid a contract under a fraud-in-the-inducement theory by proving that the other party to the contract made a false representation of material fact and that the person to whom the representation was made was induced to enter the agreement in reliance on that

misrepresentation. *See, e.g.*, *Graves v. Tulleners*, 205 Or App 267, 276-77, 134 P3d 990 (2006). Plaintiff contends that the trial court erred in not granting its motion for summary judgment with respect to defendant's fraud-in-the-inducement defense because defendant did not present evidence sufficient to support a finding on either element of that defense.

We agree with plaintiff that defendant failed to present evidence sufficient to support a finding that plaintiff misrepresented a material fact that induced defendant to enter into the guaranty agreement. Therefore, defendant failed to meet his burden on that affirmative defense.

Defendant's theory appears to be that plaintiff defrauded him by pursuing a scheme whereby HPR would purchase equipment that OSU would then convert to its own use. But defendant conceded in his third-party complaint that HPR had agreed to purchase the machine "and house it at OSU *so that both OSU and HPR could use it.*" (Emphasis added.) That understanding was embodied in the loan agreement, which stated that plaintiff was loaning funds to HPR "for acquisition of equipment to be located at [OSU]." Defendant did not provide evidence that he did not know, or that plaintiff had misled him about the plan, that OSU would use the equipment after HPR purchased it.

Although defendant appears to have known that OSU would use the equipment that HPR purchased, he contends that plaintiff breached the parties' agreement when OSU subsequently prohibited HPR from using the equipment. But defendant did not provide any evidence of plaintiff misrepresenting a material fact *before* the parties entered the agreement. Defendant contends that OSU denied HPR access to the equipment years after defendant signed the guaranty. Even if defendant's contention is true, that would not be evidence of fraud in the inducement. Assuming that OSU's denial of access to the equipment was a breach of the loan agreement, defendant produced no evidence that the years-later breach by OSU was plaintiff's plan *before* the execution of the agreements, and that it made a material misrepresentation about that plan that induced defendant to enter the guaranty agreement. In sum, defendant failed

to produce evidence in response to plaintiff's motion sufficient to support a finding on the elements of his affirmative defense of fraud in the inducement.

There are no issues of material fact on the elements of plaintiff's claim on which plaintiff bears the burden. The summary judgment record does not include triable issues of fact that preclude summary judgment on defendant's defenses raised in response to plaintiff's motion. On this record, plaintiff was entitled to judgment as a matter of law. Accordingly, the trial court erred in denying plaintiff's motion for summary judgment.

In summary, the trial court erred in granting defendant's motion for summary judgment, because the guaranty in this case was not a negotiable instrument and, therefore, the state's claim was not barred by the limitation periods in ORS 73.0118(1). The trial court also erred in denying plaintiff's motion for summary judgment for the reasons that we have explained. We therefore reverse and remand the judgment, and the supplemental judgment for attorney fees is reversed by operation of law, ORS 20.205(3)(a).

General and supplemental judgments reversed and remanded.