Argued October 31, affirmed as modified December 20, 1967,
opinion modified, petition for rehearing denied
February 21, 1968

# EUSTIS, ET AL, *Appellants, v.* PARK-O-LATOR CORPORATION, ET AL, *Respondents.*

435 P. 2d 802
437 P. 2d 734

*Leeroy O. Ehlers,* Pendleton, argued the cause for appellants. On the briefs were Fabre, Collins & Ehlers, Pendleton.

*William F. Thomas,* Portland, argued the cause for respondents. With him on the brief were Thomas, Conboy & Leahy and Raymond J. Conboy, Portland.

Before PERRY, Chief Justice, and McALLISTER, O'CONNELL, GOODWIN, DENECKE, HOLMAN and WOODRICH, Justices.

DENECKE, J.

The defendant Park-O-Lator Corporation was formed to exploit a conveyor system for vehicle parking invented by the defendant Abe Zaha. The plaintiff Eustis paid $4,000 for 50 shares of stock in the defendant corporation; the plaintiffs Slavich did likewise. Eustis, in addition, advanced the corporation $1,100 and the Slaviches advanced $350. Corporate notes were delivered to plaintiffs evidencing the debts created by the making of these advances. The individual parties entered into agreements providing that the corporation would deliver notes for $4,000 each to plaintiffs and that the Zahas, under certain conditions, would be personally liable for the corporate notes issued to plaintiffs.

Plaintiffs brought this proceeding as a suit in equity, asking that the corporation be declared insolvent, that a receiver be appointed and that a personal judgment be entered against the Zahas for the amounts owed plaintiffs by the corporation. The trial court refused to grant plaintiffs the relief prayed for and they appeal.

The corporate notes for advances were dated September 1, 1956, payable one year after date. This suit was filed in December 1964. Under both the Uniform Commercial Code and the prior Negotiable Instruments Act, the statute of limitations commenced running September 1, 1957, and expired against the corporate maker six years thereafter, September 1, 1963, a date prior to the filing of this suit.

The defendants alleged the defense of the statute of limitations in their answer. The trial court held that the statute of limitations had run against these notes, that the plaintiffs were guilty of laches and, therefore,

the obligations of both the corporation and the Zahas were discharged. The plaintiffs contend the ruling was erroneous as it applied to the Zahas.

The agreement of the individual parties was in part as follows:

> " 'All right, title and/or other interest of the corporation in the inventions, patent applications and patents of Abe Zaha and Sarah A. Zaha shall terminate and full right, title and interest shall revert to and vest in Abe Zaha and Sarah A. Zaha, and the right, title and/or interest of the corporation in all other inventions, patent applications and patents relating to the Zaha parking apparatus and system shall vest in Abe and Sarah A. Zaha, in the event that the corporation shall file a petition in bankruptcy or shall be adjudicated a bankrupt, or make a general assignment, or take the benefit of any insolvent act, or debtor's relief act, or if a receiver or trustee shall be appointed for the corporation's property; or if the corporation shall become insolvent.
>
> " 'In such event, and only in such event, Abe Zaha and Sarah A. Zaha shall then become personally liable to Orville B. Eustis, Michael Slavich, and Jeanne R. Slavich upon any promissory notes executed to them by the corporation pursuant to the pre-incorporation agreements and the agreement for subscription to the capital stock of the corporation.' "

The parties stipulated that the corporation was insolvent as of January 1965. The parties also, in effect, concede that it was insolvent at the time the lawsuit was filed. There is no evidence how long it had been insolvent prior to that time. The plaintiffs' theory is that inasmuch as the Zahas had agreed they would be personally liable upon the notes for advances, only in the event the corporation became insolvent, the cause

of action against the Zahas only accrued at the time of the corporate insolvency and, therefore, the statute of limitations had not run against the Zahas.

This is somewhat analogous to a guaranty or suretyship contract. However, it appears to be sui generis. In the usual contract in which the guarantor guarantees the payment of a note, the cause of action against the guarantor accrues upon the maturity of the note and the statute of limitations runs on the guaranty at the same time it runs on the note. For example, see *Michelin Tire Co. v. Fisher,* 116 Or 217, 219, 240 P 895 (1925).

■ Here, however, by contract, no cause of action accrued against the Zahas, personally, until such time as the corporation became insolvent and there is no evidence of insolvency prior to January 1965. If guaranty is conditioned upon some event, no cause of action accrues against the guarantor until the event occurs.

In *Michelin Tire Co. v. Fisher,* supra, the guaranty was not of payment, but, rather, against loss. We held that the guarantor "is not liable to the guarantee unless and until he has exercised reasonable effort to collect from the principal debtor,—that is, the person whose performance was guaranteed: * * *." 116 Or at 219-220.

■ In this particular case the Zaha's obligation to pay did not commence until the corporation was insolvent; therefore, the statute of limitations did not commence running prior to the filing of this lawsuit.

The statute of limitations has run against the corporation's liability on the notes and this raises the

question: Can an action be maintained against Zaha when it cannot be maintained against the corporation which was initially liable.

In the case of an agreement construed as a guaranty, the majority of jurisdictions holds that the guarantor is not discharged because the statute of limitations has run against the principal. Annotation, 58 ALR2d 1272 (1958). If the agreement is construed as one of suretyship, a majority of the jurisdictions similarly holds that the surety is not discharged because the statute of limitations has run against the principal. Arant, Suretyship, 181, 313 (1931); Annotation, 122 ALR 204 (1939). In this proceeding in which the plaintiffs could not maintain a cause of action against Zaha until after the statute of limitations had run against the corporation, there is no reason to hold that the running of the statute against the corporation is a bar to a suit against Zaha.

The trial court reasoned that the plaintiffs were barred from suing Zahas because they could have brought an action against the corporation upon the maturity of the notes. The editor of the Annotation at 122 ALR 204 states at 205: "Accordingly the majority doctrine is that mere passiveness on the part of the creditor, even when continued until the statute has run in favor of the principal, does not operate to discharge a surety from liability."

In this case it might well have been to the best interests of both the plaintiffs and the Zahas that the corporation be kept viable in the hope that it could accomplish the job for which it was formed, i.e., to successfully exploit the invention. It would be inconsistent with this likely motivation of the parties to hold that the plaintiffs had an obligation to sue the

corporation before the statute of limitations expired or lose the benefit of the Zaha's individual liability.

■ Aside from this motivation, we know of no precedent or policy persuading us to hold that a creditor has the duty to attempt to bring about the condition which will invoke the guaranty or obligation of suretyship prior to the running of the statute of limitations against the principal and that his failure to do so will discharge the guarantor. The parties contracted that the corporation's liability would accrue on the maturity date of the note, while the Zaha's liability would not accrue until or unless the corporation became insolvent. There is no reason why we should depart from the terms of the contract.

That part of the trial court's decree holding that the plaintiffs are barred from maintaining suit on the notes for the plaintiffs' advancements is modified and a decree for the plaintiffs should be entered.

The subscription agreement had an unusual provision reading as follows:

"(h) In addition to the stock issued to Orville B. Eustis and the promissory note mentioned in paragraph 1(c) above, and in addition to the stock issued to Michael Slavich and Jeanne R. Slavich and the promissory note mentioned in paragraph 1(d) above, said Orville B. Eustis shall receive a promissory note from the corporation in the sum of $4,000.00 and said Michael Slavich and Jeanne R. Slavich shall receive a promissory note from the corporation in the sum of $4,000.00, each of said notes to be with interest at 6% to be paid at the rate of 10% of the gross received by the corporation over and above $50,000.00 until the principal and interest of said obligation has been paid in full. Furthermore, Eustis shall receive stock in subsidiary licensee corporations as is provided for in the said pre-incorporation agreements."

The legality of such provision appears questionable, but this possible defense was not pleaded.

■ No notes for $4,000 were ever made by the corporation. There is no explanation in the record why such notes were not made. Plaintiffs did not pray in their complaint that the corporation be required to make such notes. The corporation never agreed to make such notes or to assume such obligation in any form. "The general rule obtains at law that corporations cannot be bound by acts done or promises made in their behalf before they came into existence." *Huson v. Portland & Southeastern Ry. Co.*, 107 Or 187, 220, 211 P 897, 213 P 408 (1923).

It may be that the parties became aware of the doubtful validity of such procedure and affirmatively decided that the corporation would not issue such notes. In any event, the Zahas agreed to become personally liable in the event of the corporation's insolvency, "upon any promissory notes executed to them [plaintiffs] by the corporation pursuant to the preincorporation agreements." No promissory notes for $4,000 were executed by the corporation and the corporation did not in any form undertake to be obligated to plaintiffs in the amount of $4,000.

■■ Under the specific agreement of the parties, and in accordance with the general law, the Zahas have no obligation to the plaintiffs for $4,000 each. The rule in the case of a guaranty is: "If there is no primary liability on the part of the third party, there is nothing to guarantee and there can be no contract of guaranty." *Dykes v. Clem Lumber Co.*, 58 Ariz 176, 118 P2d 454, 455 (1941); *Somers v. United States Fidelity & Guaranty Co.*, 191 Cal 542, 217 P 746, 749

(1923), state that such is the rule whether the alleged contract is one of guaranty or one of suretyship.

Affirmed as modified. Costs to appellants.

Fabre, Collins & Ehlers, Pendleton, filed a brief in support of the petition.

No appearance contra.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

DENECKE, J.

The plaintiffs filed a petition for rehearing contending that our opinion was in error in stating that the defendant corporation had never agreed to pay the plaintiffs $4,000 each and had never issued notes for such amounts.

The form of the record in this appeal is unusual because the court reporter's notes were stolen before his notes were transcribed. Upon a review of the record we are now uncertain whether the corporation agreed to make such notes or to assume such obligations and, therefore, we delete statements to that ef-

fect and comments thereon which were made in our original opinion.

Based upon the form of record submitted to us, however, we adhere to the statement made in our initial opinion that no notes for $4,000 were ever made and plaintiffs did not seek in this lawsuit to require the corporation to make the notes, if such a request was not already barred by the passage of time. For this reason the petition is denied.