[56 NYS3d 1]

BANK OF NEW YORK MELLON, Solely in its Capacity as Securities Administrator for J.P. MORGAN MORTGAGE ACQUISITION TRUST, SERIES 2006-WMC2, Appellant, v WMC MORTGAGE, LLC, as Successor by Merger to WMC MORTGAGE ACQUISITION CORP., et al., Respondents.

First Department, May 11, 2017

## APPEARANCES OF COUNSEL

*Quinn Emanuel Urquhart & Sullivan, LLP*, New York City (*Philippe Z. Selendy*, *William B. Adams*, *Andrew R. Dunlap* and *Daniel P. Mach* of counsel), for appellant.

*Jenner & Block LLP*, Washington, D.C. (*Matthew S. Hellman* of the bar of District of Columbia, admitted pro hac vice, of counsel), and *Jenner & Block LLP*, New York City (*Stephen L. Ascher* of counsel), for WMC Mortgage, LLC, respondent.

*Sullivan & Cromwell LLP*, New York City (*Darrell S. Cafasso*, *Robert A. Sacks* and *Matthew L. Lippert* of counsel), for J.P. Morgan Mortgage Acquisition Corporation and JPMorgan Chase Bank, N.A., respondents.

## OPINION OF THE COURT

MOSKOWITZ, J.

This case is one of many commenced in the wake of the 2008 global financial crisis. As in many of the other cases that have come before us—including one nearly identical to this case[1]—the action is based upon the sale of residential mortgage-backed securities (RMBS).

Under a Mortgage Loan Sale and Interim Servicing Agreement (MLSA) dated July 1, 2005, defendant J.P. Morgan Mortgage Acquisition Corp. (JPMAC) bought from defendant WMC Mortgage Corp. (WMC), the originator, approximately 6,510 residential mortgage loans with a total principal balance

---

1. *Bank of N.Y. Mellon v WMC Mtge., LLC*, 136 AD3d 1 (1st Dept 2015), *affd* 28 NY3d 1039 (2016).

of approximately $1.275 billion.[2] JPMAC sold the securitized loans to the J.P. Morgan Mortgage Acquisition Trust, Series 2006-WMC2 (Trust) under a Pooling and Servicing Agreement (PSA) dated June 1, 2006; plaintiff Bank of New York Mellon (BNY) was the securities administrator for the Trust. In a transaction that closed on June 28, 2006, the Trust issued RMBS securities and sold them to investors (certificate holders) in the Trust.

WMC and JPMAC made numerous representations and warranties (R&Ws) in the MLSA and PSA regarding the nature and quality of the loans. WMC and JPMAC also agreed to certain repurchase, indemnification, and notice obligations with respect to the Trust. First, as relevant here, the MLSA provided that when a party discovers a material breach of any R&W, that party shall give the other parties prompt written notice of the breach; the notified parties then have 60 days to cure the breach by repurchasing or substituting the defective loan and providing indemnification (the repurchase protocol). The MLSA further provided that a cause of action for repurchase did not accrue until after the purchaser made a demand for repurchase (the accrual provision).

Second, section 2.03 (a) (i) of the PSA restated the repurchase protocol, and provided, in pertinent part, that if a party discovers a breach by WMC of any R&W under the MLSA, the discovering party, or BNY or the Trustee, must try to "cause [WMC] to . . . cure such defect or breach within 90 days from the date [WMC] was notified of such missing document, defect or breach." Section 2.03 (a) (i) further contained the so-called "backstop provision," which obliged JPMAC to purchase defective loans if WMC did not do so. Specifically, section 2.03 (a) (i) stated, "In the event that [WMC] shall fail to cure the applicable breach or repurchase of a Mortgage Loan in accordance with the [repurchase protocol], [JPMAC] shall do so." Third and finally, section 2.02 of the PSA provided that, should the servicer (defendant JPMorgan Chase Bank, N.A. [JPM Bank]), among others, discover any breach of WMC's R&Ws in the MLSA, it was to give prompt written notice to the other parties.

On May 24, 2012, January 22, 2013, and October 31, 2013, certain certificate holders provided notice to BNY, JPMAC, and

---

2. Defendant WMC Mortgage, LLC is the successor to WMC Mortgage Corp.

WMC of purported warranty breaches with respect to many of the loans in the Trust. Accordingly, by notices dated June 7, 2012, January 28, 2013, and November 5, 2013, BNY, in its capacity as securities administrator, notified WMC and JPMAC that over 1,593 mortgage loans breached one or more of the R&Ws, and demanded that WMC or JPMAC repurchase the defective loans. Despite this demand, however, neither JPMAC nor WMC repurchased the loans.

On November 1, 2013, BNY, in its capacity as securities administrator for the Trust and on behalf of the certificate holders, commenced this "put back" action. As relevant to this appeal, BNY asserted claims seeking damages from WMC and JPMAC for breach of contract with respect to the R&Ws, and specific performance of the repurchase obligation. BNY also sought damages from WMC, JPMAC, and JPM Bank for breach of the PSA by failing to provide notice of defective loans.

In March 2014, defendants moved to dismiss the complaint under CPLR 3211, arguing, among other things, that BNY's causes of action for breach of the repurchase obligations were untimely under this Court's decision in *ACE Sec. Corp. v DB Structured Prods., Inc.* (112 AD3d 522 [1st Dept 2013], *affd* 25 NY3d 581 [2015]) because they were filed more than six years after the PSA's June 28, 2006 closing date.

The IAS court dismissed the action in its entirety (50 Misc 3d 229 [Sup Ct, NY County 2015]). As to BNY's causes of action against WMC for breach of the MLSA by failing to repurchase defective loans (the first, second, sixth, and seventh causes of action), the IAS court dismissed these claims as untimely. The court also dismissed BNY's cause of action against JPMAC for breach of the "backstop" repurchase obligations under the PSA (the fourth cause of action) and against JPMAC and JPM Bank for failure to notify (the fifth cause of action).[3] We now modify to the extent of partially reinstating the fourth cause of action, and reinstating the fifth cause of action only as against JPM Bank.

To begin, we find that the IAS court properly granted the motion to dismiss the claims against WMC for breach of the

---

**3.** BNY has abandoned its third cause of action against JPMAC (for breaches of its own representations and warranties, and for not repurchasing loans that breached those separate warranties), and its eighth cause of action against JPMAC for breach of the implied covenant of good faith and fair dealing. BNY also tacitly admits that, to the extent its claims for repurchase are not reinstated, there is no basis to reinstate its sixth cause of action, for indemnification/attorneys' fees.

repurchase obligation, as those claims were untimely filed despite the existence of the MLSA's accrual provision. As defendants aptly note, the Court of Appeals definitively settled this issue in *ACE Sec. Corp., Home Equity Loan Trust, Series 2006-SL2 v DB Structured Prods., Inc.* (25 NY3d 581, 590 [2015] [*ACE*]), setting forth "a clear rule that a breach of contract claim in an RMBS put-back action accrues on the date the allegedly false representations and warranties were made" (*Deutsche Bank Natl. Trust Co. v Flagstar Capital Mkts. Corp.*, 143 AD3d 15, 16 [1st Dept 2016] [*Flagstar*]). Here, BNY commenced the action more than six years after the closing, thus placing the action outside the six-year statute of limitations.

BNY acknowledges, as it must, that our recent decision in *Flagstar* rejected the very arguments BNY makes here; indeed, *Flagstar* addressed an accrual provision nearly identical to the one found in the MLSA between the parties. Nonetheless, BNY asserts that our decision in *Flagstar* was erroneous and should be disregarded. In support of this argument, BNY asserts that *Flagstar* conflicts with our prior decision in *Highland Mech. Indus. v Herbert Constr. Co.* (216 AD2d 161 [1st Dept 1995] [*Highland*]), and is also incompatible with the Court of Appeals' decision in *John J. Kassner & Co. v City of New York* (46 NY2d 544 [1979] [*Kassner*]).

Neither of these arguments has any merit. First of all, the decision in *Flagstar* does not conflict with the decision in *Highland*. In the latter, we enforced a contractual provision stating that a subcontractor was not entitled to receive any form of payment before the contractor's actual receipt of that payment. In reaching that conclusion, we found that it was implicit in the contract clause that the contractual limitation period begins to run only upon notification of payment by the contractor to its subcontractor. *Highland*, therefore, merely held that parties to a contract can agree on when a payment obligation arises, and hence, when a breach arises. This holding does not imply that parties can decide to change the accrual of an otherwise accrued claim or extend the running of a limitations period.

Similarly, *Kassner* concerned a contractual provision stating that the plaintiff was obliged to bring a cause of action for nonpayment within six months of the filing of a certificate of nonpayment. In light of that clause, the Court found that when the right to final payment is subject to a condition, the obligation to pay arises and the cause of action accrues only when

the condition has been fulfilled (*Kassner*, 46 NY2d at 550). This principle has no bearing here. As the *Kassner* Court noted, statutes of limitations "express[ ] a societal interest or public policy 'of giving repose to human affairs' " (*Kassner*, 46 NY2d at 550, quoting *Flanagan v Mount Eden Gen. Hosp.*, 24 NY2d 427, 429 [1969]). Parties may therefore agree to shorten the time period within which to commence an action, but are not entirely free to waive or modify the statutory defense. Thus, agreements made at the inception of liability to waive or extend the statute of limitations are "unenforceable because a party cannot 'in advance, make a valid promise that a statute founded in public policy shall be inoperative' " (*Kassner*, 46 NY2d at 551 [citations omitted]). Certainly, nothing in *Kassner* suggests that parties may agree to adopt a discovery rule to delay the running of a limitations period for an existing breach of contract, as BNY proposes to do here.

We turn now to that part of the IAS court's order granting the motions to dismiss the fourth cause of action, which sought JPMAC's specific performance of the backstop repurchase obligation found in section 2.03 of the PSA. Upon review, we partially reinstate that cause of action.

The law is now well-settled that the expiration of a time period set forth in a statute of limitations does not extinguish the underlying right, but merely bars the remedy (*Faison v Lewis*, 25 NY3d 220, 233 [2015]; *see also Tanges v Heidelberg N. Am.*, 93 NY2d 48, 55 [1999]). The implication of this rule is apparent where there is a relationship that involves an ongoing obligation, such as the ongoing obligation not to commit fraud. Thus, if the party who has discovered the fraud fails to bring a timely action, it has no way to recover on that fraud, but its failure to bring an action does not mean that it has lost its underlying right not to be defrauded or that the other party has been absolved of the obligation not to defraud.

Nevertheless, even though the passing of an applicable limitations period does not wipe out a party's underlying right, WMC's obligation to repurchase defective loans no longer existed because the statute of limitations had run, as *ACE* makes clear that BNY's right (remedy) to have WMC repurchase defective loans is not a continuing one. To be sure, as noted above, the parties negotiated a complicated repurchase and accrual protocol with respect to BNY's ability to recover for defective loans involving notice requirements and the sole remedy of repurchase. But under *ACE*, BNY's right to have

WMC repurchase the loans, and to have JPMAC guarantee that repurchase, did not continue indefinitely; rather, that right expired six years after the closing date of the transaction. *ACE* also makes clear that, as a substantive matter, WMC's legal obligation to repurchase effectively expired when the *statute of limitations* ran.

In light of the Court of Appeals' reasoning in *ACE*, it becomes clear that WMC did not guarantee the future performance of the loans, but merely warranted certain characteristics of the loans, and promised that "if those warranties and representations are materially false, it will cure or repurchase the non-conforming loans within the same statutory period in which remedies for breach of contract (i.e., rescission and expectation damages) could have been sought" (*ACE*, 25 NY3d at 596). Absent a clearer contractual term, such as one specifying that the repurchase obligation would continue for the life of the loans, the Court of Appeals found that the repurchase obligation did not create a repurchase remedy that would extend the effect of the R&Ws beyond the statutory term for breach of contract. Thus, WMC's obligation and remedy here create one thing: a six-year promise to repurchase defective loans.

But separate from the existence of WMC's legal obligation within a particular time frame is the question of how BNY was to proceed in order to enforce WMC's repurchase obligation and JPMAC's backstop repurchase obligation, and whether BNY could proceed against JPMAC on a WMC liability only if BNY had first successfully asserted a timely claim against WMC.

To assert a timely claim against WMC under *ACE*, BNY had to seek to enforce WMC's obligation to repurchase loans that were in breach as of June 28, 2006 by filing suit within six years of that date, and also had to satisfy the procedural condition precedent by providing WMC with a default notice relating to specific loans and by providing 60- and 90-day periods for cure and repurchase. Here, on June 7, 2012, BNY gave notice to WMC of certain loan breaches; the notice was within six years of the transaction closing date of June 28, 2006, and during WMC's existing repurchase obligation period. But even if BNY had filed a summons on or before June 28, 2012, it would not have been able to file a timely suit against WMC based on the June 7 notice because the 60- and 90-day periods for cure and repurchase would not have elapsed before the expiration of the limitations period. The other notices for alleged loan breaches

were after June 28, 2012—that is, after WMC's legal obligation with respect to the loans had terminated by operation of the statute of limitations.

Conversely, to assert a claim against JPMAC based on JPMAC's backstop guaranty obligation, BNY had to assert an underlying WMC breach of the repurchase obligation that triggered JPMAC's backstop repurchase duty. When BNY gave WMC notice of breaching loans on June 7, 2012, WMC's repurchase obligation remained in effect, and when WMC did not repurchase within 90 days, JPMAC's backstop obligation kicked in under the PSA provision stating that in the event WMC "shall fail" to repurchase a loan in accordance with the repurchase protocol, JPMAC "shall do so." That BNY did not (and could not) bring a timely suit to enforce WMC's obligation to repurchase the noticed loans does not negate the repurchase obligation and JPMAC's backstop obligation.

Indeed, nothing in *ACE* or *Flagstar* suggests that JPMAC's then-triggered guaranty obligation to repurchase exists only where BNY timely asserted an underlying claim against WMC. JPMAC's obligation to repurchase is not the same as WMC's; rather, it is a promise to backstop WMC's obligation. That both WMC's and JPMAC's repurchase obligations are part of the same remedial scheme for breaches of WMC's warranties does not mean that the backstop obligation expired at the same time the WMC repurchase obligation expired. To the extent the backstop obligation is attached to a valid WMC liability—albeit one that cannot be enforced against WMC because it is time-barred—the JPMAC obligation came into existence when WMC failed to repurchase.

Accordingly, BNY asserted a timely claim against JPMAC in connection with the June 7, 2012 notice, based on the latter's backstop obligation to repurchase upon WMC's failure to do so, as that claim against JPMAC accrued after it failed to meet its backstop obligation following WMC's failure to repurchase the loans. But BNY could not assert such a claim when WMC failed to comply with a repurchase demand made after June 28, 2012 because after that date WMC had no repurchase obligation and JPMAC had no related backstop obligation. In sum, under *ACE*, the backstop repurchase claims may not be sustained to the extent they do not backstop a demand made on WMC when it was obliged to repurchase, before June 28, 2012. We therefore reinstate the fourth cause of action as against JPMAC to this limited extent.

██ We turn now to the fifth cause of action alleging failure to notify, and based on our recent decision in *Morgan Stanley Mtge. Loan Trust 2006-13ARX v Morgan Stanley Mtge. Capital Holdings LLC* (143 AD3d 1 [1st Dept 2016]), we reinstate that cause of action as against JPM Bank. In *Morgan Stanley*, we likewise reinstated a failure to notify claim; in so doing, we noted that in *Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc.* (133 AD3d 96 [1st Dept 2015]), we had previously found that "a seller's failure to provide . . . notice of material breaches it discovers in the underlying loans states an independently breached contractual obligation, allowing a plaintiff to pursue separate damages" (*Morgan Stanley*, 143 AD3d at 7).

Thus, both *Morgan Stanley* and *Nomura* found that the contractual obligation to notify was independent of the warranty obligations and that claims for failure to notify were not claims "respecting a warranty breach" subject to the "sole remedy" clause. Nor did either case suggest that failure to notify claims could be brought only where the servicer was also a party subject to the warranties. As a result, we find that the "sole remedy" clause in the PSA does not bar BNY's cause of action against JPM Bank as the servicer.

Nor does the fifth cause of action contravene the Court of Appeals' decision in *ACE*. In *ACE*, as noted above, the Court held that the sponsor's obligation to repurchase purportedly defective loans was the remedy for the sponsor's breach of its warranties, rather than an independently enforceable right. This holding does not bar JPM Bank's obligation as servicer because the servicer is not subject to the repurchase protocol at all. As a result, because JPM Bank has no obligations under the repurchase protocol, that protocol cannot bar a cause of action against it for an independent duty to notify.

Accordingly the orders of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered September 18, 2015, which, to the extent appealed from as limited by the briefs, granted defendants' motions to dismiss the first, second, sixth, and seventh causes of action, the fourth cause of action insofar as it alleges that defendant J.P. Morgan Mortgage Acquisition Corp. breached its backstop repurchase obligation, and the fifth cause of action as against defendant JPMorgan Chase Bank, N.A., should be modified, on the law, to deny the motions as to the fourth cause of action to the extent it is based upon defendant WMC Mortgage, LLC's failure to repurchase

the loans referenced in the June 7, 2012 breach notice and the fifth cause of action as against JPMorgan Chase Bank, N.A., and otherwise affirmed, without costs.

ACOSTA, J.P., ANDRIAS, GISCHE and WEBBER, JJ., concur.

Orders, Supreme Court, New York County, entered September 18, 2015, modified, on the law, to deny defendants' motions as to the fourth cause of action to the extent it is based upon defendant WMC Mortgage, LLC's failure to repurchase the loans referenced in the June 7, 2012 breach notice and the fifth cause of action as against defendant JPMorgan Chase Bank, N.A., and otherwise affirmed, without costs.