IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| UMPQUA BANK, | ) | |
| | ) | No. 37400-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| CHARLES A. GUNZEL, III, and | ) | |
| GINELLE F. GUNZEL, husband and | ) | |
| wife, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — In an appeal wherein we apply Oregon law, the parties ask us to determine when a cause of action accrued, for purposes of the statute of limitations, against a guarantor of a commercial loan when the commercial borrower defaulted but made periodic payments thereafter. Did the limitation period commence to run on the first default by the borrower or did later payments by the borrower extend the

commencement of the period?  We base our decision on the language of the commercial guaranty, Oregon statutes, Oregon case law regarding application of the statute of limitations, Oregon law regarding waiver of protections under the statute of limitations, and Oregon public policy prohibitions against waiver.  We hold that Oregon law invalidated the partial waiver of the protection of the statute of limitations found in the parties' commercial guaranty.  In turn, we conclude that the statute of limitations commenced on the first default by the borrower, and we direct judgment in favor of guarantor, Charles Gunzel.

## FACTS

This appeal concerns a loan issued by Umpqua Bank to a corporation, Cornerstone Building Co., with Charles Gunzel personally guaranteeing the loan's payment.  On June 27, 2007, Cornerstone borrowed $200,000 from Umpqua Bank.  The maturity date for the entire debt, under the promissory note signed by Cornerstone, was May 28, 2009.

Also on June 27, 2007, Charles Gunzel, the president and owner of Cornerstone, executed a commercial guaranty, under which Gunzel guaranteed Cornerstone's payment and performance of the $200,000 indebtedness to Umpqua Bank.  Gunzel had guaranteed earlier extensions of credit by Umpqua Bank to Cornerstone.  The June 2007 commercial guaranty was on a pre-printed form supplied by Umpqua Bank and prepared and copyrighted by an entity that supplies forms for financial institutions.

2

The commercial guaranty signed by Charles Gunzel expressed that Oregon law governed the agreement. The guaranty required that Gunzel, in the event of Cornerstone's default, fully and timely repay any remaining indebtedness and required that Gunzel remain liable indefinitely:

> THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND *PUNCTUAL* PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS.
> . . . .
> This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and *will continue in full force until all the Indebtedness incurred or contracted* before receipt by Lender of any notice of revocation *shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full*.

Clerk's Papers (CP) at 70 (emphasis added).

Under the June 2007 commercial guaranty, the statute of limitations to be applied on any suit brought by Umpqua Bank against Charles Gunzel would in essence be the same as the statute of limitations imposed on any suit brought by Umpqua Bank against Cornerstone for the principal debt owed:

> Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of . . . any statute of limitations, *if at any time* any action or suit brought by Lender against Guarantor is commenced, *there is outstanding indebtedness which is not barred by any applicable statute of limitations*.

3

CP at 71 (emphasis added). The guaranty further read:

> Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are *reasonable and not contrary to public policy or law*. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

CP at 71 (emphasis added). Finally, both the June 2007 loan agreement and commercial guaranty afforded Umpqua Bank reasonable attorney fees and costs incurred when enforcing the respective agreements.

On May 28, 2009, the maturity date of the promissory note, Cornerstone defaulted on its obligations by failing to pay the note in full. On June 30, 2009, Cornerstone's shareholders voted to dissolve the corporation. Nevertheless, the defunct corporation periodically made payments on the loan until December 16, 2013. As of Cornerstone's final payment, the balance of the loan's principal was $185,214.

In its brief, Umpqua Bank repeatedly claims that Charles Gunzel personally made the payments after May 28, 2009. Nevertheless, it cites to no portion of the record to support this factual allegation. The records provided by Umpqua Bank indicate that payment was applied to Cornerstone's debt and does not specify any payment from Gunzel. We recognize that a defunct corporation could still maintain a bank account and make payments from that account. Although a bank will likely require a corporation, at the time it opens an account, to prove the existence of the corporation, the bank will likely not require periodic proof of the ongoing existence of the corporation. In a

4

declaration, Charles Gunzel avers that Cornerstone, not he, tendered the late payments to Umpqua Bank. Umpqua Bank does not controvert this testimony.

PROCEDURE

On March 28, 2019, more than nine years after Cornerstone's default, Umpqua Bank brought suit against Charles Gunzel to enforce the personal guaranty for Cornerstone's debt. Umpqua Bank sought to recover the principal amount of $185,214.00, interest totaling $72,177.84, interest thereafter at $28.30 per day beginning March 25, 2019, and late charges in the amount of $194.21.

Charles Gunzel moved for summary judgment on the basis of the statute of limitations. He argued that, under Oregon law: (1) the statute of limitations on a personal guaranty is independent from any underlying obligation, (2) the six-year statute of limitations accrued on May 28, 2009, when Cornerstone's loan matured without payment and he thereby became obligated to pay the debt, (3) Cornerstone's period payments thereafter did not recommence the statute of limitations since Gunzel remained in default under his guaranty, (4) the waiver of the statute of limitations defense under his guaranty agreement with Umpqua Bank violated public policy, and (5) the statute of limitations bars Umpqua's suit because the bank sued after May 28, 2015. The trial court denied Charles Gunzel's motion.

Umpqua Bank moved for summary judgment. The trial court granted Umpqua's motion and entered judgment in Umpqua Bank's favor in the amount of $265,045.99.

The trial court also granted Umpqua Bank's request for reasonable attorney fees and costs.

LAW AND ANALYSIS

On appeal, we must answer four discrete questions. First, under Oregon law, when does the statute of limitations begin to accrue on the obligation of the guarantor of a loan when the underlying debtor defaults but later tenders payments, but in the meantime the guarantor tenders no payments? Second, did the commercial guaranty between Umpqua Bank and Charles Gunzel alter the date of the accrual of the Oregon statute of limitations? Third, if the answer to question two is yes, was that alteration in the form of a waiver? Fourth, did Oregon public policy prohibit the commercial guaranty from modifying the accrual date of the statute of limitations? We address these questions in such order.

Statute of Limitations on a Guaranty

The parties agree that Oregon law controls application of the statute of limitations and that six years is the limitation period to apply to Umpqua Bank's claim against Charles Gunzel on the guaranty. The parties disagree as to the date of accrual of the cause of action. Gunzel contends the action accrued when Cornerstone first defaulted on the loan on May 28, 2009. Umpqua Bank wishes to start the commencement of the running of the limitation period when Cornerstone tendered its last payment on December 16, 2013.

Under an Oregon statute, the statute of limitations for a breach of contract is six years. OR. REV. STAT. (ORS) § 12.080(1). In turn, under another Oregon statute, the limitation period on a debt owed does not commence until the last payment made by the borrower.

> Whenever any payment of principal or interest is made after it has become due, upon an existing contract, whether it is a bill of exchange, promissory note, bond, or other evidence of indebtedness, the limitation shall commence from the time the last payment was made.

ORS § 12.240.

Charles Gunzel argues that the delay of the accrual date resulting from a late payment only applies to the underlying note on the loan, under the language of ORS § 12.240, and not to any guaranty of the debt. The statute does not mention that the limitation period on any guaranty is extended by reason of a late payment, although the Oregon statute mentions "other evidence of indebtedness." Gunzel contends that Oregon case law stands for the proposition that the underlying loan agreement and the guaranty of the debt are distinct contracts and, therefore, the accrual date on the statute of limitations for each discrete contract are different. We agree.

Charles Gunzel emphasizes *Eustis v. Park-O-Lator Corp.*, 249 Or. 194, 435 P.2d 802, 437 P.2d 734 (1967). Defendants Abe and Sara Zaha personally guaranteed the debt of Park-O-Lator Corporation owed to O.B. Eustis. Under the guaranty agreement, the Zahas became responsible for the corporate debt, not on the maturity date of Park-O-

Lator's notes, but only after the corporation became insolvent. The Supreme Court of Oregon recognized that, although the statute of limitations had lapsed as to Eustis' claims against Park-O-Lator when it earlier defaulted on the loan, the statute of limitations against the Zahas did not begin to run until the corporation's insolvency at a later date.

The Oregon Supreme Court, in *Eustis v. Park-O-Lator Corp.*, observed that personal guarantees and agreements for underlying debt are separate contracts with independent statutes of limitation. Although both limitation periods typically run concurrently, they need not run parallel. The Oregon Supreme Court held the Zahas to be liable under the guaranty even though the limitation period had expired against the corporation. The plaintiffs had filed within six years of the corporation becoming insolvent.

In *Eustis v. Park-O-Lator Corp.*, the statute of limitations against the guarantor did not accrue at a date earlier than the statute of limitations against the borrower as is proposed by Charles Gunzel to his guaranty. Instead, the converse occurred. We see no reason, however, to distinguish the two distinct circumstances for purposes of accrual of the claim. *Eustis* stands for the propositions that the loan agreement and the guaranty agreement are discrete contracts and the accrual date for the debt owed by the borrower can be separate from the date of accrual on the obligation of the guarantor.

No Oregon case directly addresses the question of whether a late payment by the debtor extends the accrual date for the statute of limitations on the claim against the

guarantor. Nevertheless, in addition to *Eustis v. Park-O-Lator Corp.* indirectly supporting this conclusion, the majority, if not universal, rule in the United States stands for the proposition. One annotation reads:

> In most of the jurisdictions in which the point has arisen, it has been held that a payment by a principal debtor will not operate to toll the Statute of Limitations as to a guarantor of the debt, even though it might do so as to a surety.

*Acknowledgement, New Promise, or Payment by Principal as Tolling Statute of Limitations as Against Guarantor*, 84 A.L.R. 729, 729 (1933).

This majority rule follows from the distinction between the underlying debt agreement and the guaranty agreement as made by the Oregon court in *Eustis v. Park-O-Lator Corp.* The obligations of the guarantor are not predicated on the note, but on the contract expressed in the guaranty. *Cadle Co. v. Webb*, 66 Mass. App. Ct. 269, 273, 846 N.E.2d 1179 (2006). A guaranty of a promissory note is essentially a new contract independent of any contract obligations of the maker promisor. *Maddox v. Duncan*, 143 Mo. 613, 45 S.W. 688, 689 (1898).

In turn, based on the independent contract between the lender and the guarantor, the guaranty is not necessarily subject to the same statute of limitations as the underlying obligation. *Hudson v. Game World, Inc.*, 126 N.C. App. 139, 484 S.E.2d 435, 440 (1997). A guarantor's liability generally arises at the time of the default of the principal debtor on the obligations which the guaranty covers. *In re Estate of Bitker*, 251 Wis. 538,

9

30 N.W.2d 449, 452 (1947); *Hudson v. Game World, Inc.*, 484 S.E.2d 435, 440 (1997). Stated differently, the right to sue on the guaranty arises immediately on the failure of the principal debtor to pay the debt at maturity. *Wachovia Bank & Trust Co. v. Clifton*, 203 N.C. 483, 166 S.E. 334, 335 (1932); *Beebe v. Kirkpatrick*, 321 Ill. 612, 152 N.E. 539, 541 (1926).

Because the guarantor generally becomes obligated to pay the borrower's entire debt on any default, payment of interest by the makers of a note, after maturity but before suit is barred on the note, does not toll the statute of limitations against those who have guaranteed the payment of the note. *Wachovia Bank & Trust Co. v. Clifton*, 166 S.E. 334, 335 (1932). Although part payment by the maker of the note might suffice to restart the limitations period as to the maker, such payment does restart the period for the guarantor. *Marinelli v. Lombardi*, 16 N.J. Misc. 71, 196 A. 701, 703 (1938); 51 AM. JUR. 2D *Limitation of Actions* § 312 (2011). An acknowledgment by a principal debtor will not affect the running of the statute of limitations as to a guarantor. *Federal Deposit Insurance Corp. v. Petersen*, 770 F.2d 141, 143 (10th Cir. 1985). Even when the guaranty covers several loans to the debtor but only one agreement between the lender and the guarantor establishes the guaranty, the statute of limitations begins to run against all debt on the default of the principal on just one of the loans. *Spellbrink v. Bramberg*, 245 Wis. 103, 13 N.W.2d 600, 601-02 (1944).

In *Hudson v. Game World, Inc.*, 484 S.E.2d 435, 440 (1997), the court ruled that the creditor's cause of action arose against guarantor Richard Tarkington when the principal debtor, Aqua-Life, stopped making payments on the Hudson Pools' account. In *Maddox v. Duncan*, 45 S.W. 688, 689 (1898), the Supreme Court of Missouri addressed the same question. The *Maddox* court held that a guaranty of a promissory note is essentially a new contract independent of any contract obligations of the maker promisor. The court ruled that late payments on a note by the maker did not arrest the running of the statute of limitations as to the guarantor.

Pursuant to the loan agreement between Cornerstone and Umpqua Bank, the maturity date for the promissory note was May 28, 2009. By failing to satisfy Cornerstone's debt in full by that date, Charles Gunzel breached his commercial guaranty agreement with Umpqua. Gunzel took no steps to cure the default thereafter. Thus, according to Oregon case law, Umpqua's cause of action arose against Gunzel on May 28, 2009. This conclusion follows the general Oregon rule that a claim for breach of contract accrues when the contract is breached. *Alderson v. State*, 105 Or. App. 574, 806 P.2d 142, 146 (1991).

We acknowledge that, when the guarantor approves or ratifies the late part payment by the primary debtor, the statute of limitations will be revived as to the guarantor as well. *Corona v. Corona*, 2014-NMCA-071, 329 P.3d 701, 709 (2014); *PNL Asset Management Co. v. Brendgen & Taylor Partnership*, 193 Ariz. 126, 970 P.2d 958,

11

964 (Ct. App. 1998). We recognize that Charles Gunzel was the president and owner of

Cornerstone. Nevertheless, in response to Gunzel's summary judgment motion, Umpqua

Bank provided no facts as to the role that Gunzel played in the part payments, let alone

any authorization or ratification of the payments by Gunzel. Umpqua Bank does not

argue ratification.

Contract Statute of Limitations

To repeat, the commercial guaranty signed by Charles Gunzel declared:

> Guarantor also waives any and all rights or defenses based on
> suretyship . . . but not limited to, any rights or defenses arising by reason of
> . . . any statute of limitations, *if at any time* any action or suit brought by
> Lender against Guarantor is commenced, *there is outstanding Indebtedness
> which is not barred by any applicable statute of limitations*.

CP at 71 (emphasis added). The parties agree that, on March 28, 2019, the date Umpqua

Bank filed suit, the statute of limitations did not bar any debt owed by Cornerstone since

Cornerstone made a payment on December 16, 2013, which date was within six years of

March 28, 2019. As already indicated, under an Oregon statute, the limitation period, at

least as to Cornerstone, did not commence until the last payment made by the borrower.

ORS § 12.240.

Umpqua Bank wishes, under the terms of the commercial guaranty, to apply the

same accrual date to any suit on the guaranty against Charles Gunzel. In response,

Gunzel argues, in part, that state statutes, not the parties' agreement, govern accrual of

12

cause of action and the running of the statute of limitations. Gunzel emphasizes ORS §

12.010, which declares:

> Actions shall only be commenced *within the periods prescribed in this chapter*, after the cause of action shall have accrued, except where a different limitation is prescribed by statute.

(Emphasis added.)

We agree with Umpqua Bank that, despite the guaranty being a contract distinct

from the loan agreement signed by Cornerstone, the commercial guaranty language in

effect imposed the same limitation period on any suit brought against guarantor, Charles

Gunzel. By the language of the commercial guaranty, the accrual date to start the

limitation period's running would also be the same as the length of the limitation period.

Gunzel agreed to waive the bar of any statute of limitations if "there is outstanding

indebtedness which is not barred by any applicable statute of limitations."

As a general proposition, contracting parties may insert in the agreement a statute

of limitations different from the statute of limitations otherwise imposed by statute.

*Biomass One, LP v. S-P Construction*, 103 Or. App. 521, 799 P.2d 152, 154 (1990).

Parties are free to contractually limit the timeframe in which to bring a claim, and that

limit will be enforced unless unreasonable. *Hatkoff v. Portland Adventist Medical

Center*, 252 Or. App. 210, 287 P.3d 1113, 1121 (2012); *Wood Park Terrace Apartments

Ltd. Partnership v. Tri-Vest, LLC*, 254 Or. App. 690, 297 P.3d 494, 497 (2013). This

freedom to contract extends to the accrual date for the limitation period. *Wood Park*

*Terrace Apartments Ltd. Partnership v. Tri-Vest*, *LLC*, 297 P.3d 494, 497 (2013).

Whether the contractual period violates Oregon public policy under these circumstances

is a distinct question. Nevertheless, we disagree with Charles Gunzel's implied argument

that parties to contracts in Oregon can never alter either the limitation period or the date

for the accrual of the running of the period.

## Waiver

The commercial guaranty signed by Charles Gunzel did not read: "The statute of

limitations for suit on the guaranty shall commence to run at the last time of payment on

the debt by either the borrower or the guarantor." Stated differently, the language in the

commercial guaranty signed by Charles Gunzel did not directly impose the same accrual

date for a claim on the guaranty as with any suit on the debt. Instead, the guaranty

language indirectly created the same accrual date through a waiver, but only assuming

that the limitation period otherwise imposed by statute would then bar suit. We consider

this distinction important as discussed below. We also consider this language a "partial

waiver" of the statute of limitations.

## Public Policy

We must now determine whether to enforce the statute of limitations partial

waiver in the commercial guaranty signed by Charles Gunzel. Gunzel argues that the

guaranty's waiver of his statute of limitations defense violates Oregon public policy.

Umpqua Bank seeks enforcement of the waiver since Gunzel did not waive his right to

assert a statute of limitations defense for all time, but only for as long as the statute of limitations for the promissory note had not expired. Because the waiver did not impose a definitive accrual date within a reasonable time of Gunzel's breach, we agree with Charles Gunzel. In so ruling, we note that the commercial guaranty is on a form prepared for Umpqua Bank. Umpqua Bank does not contend that Charles Gunzel could have negotiated to remove the waiver.

Oregon, like any other state, sometimes invalidates contracts or contractual clauses based on public policy. Early in its history, the Oregon Supreme Court followed the principle that no man or woman can bind himself or herself by estoppel not to assert a right which the law gives on reasons of public policy. *Mitchell v. Campbell*, 14 Or. 454, 13 P. 190, 192 (1886). The Oregon Supreme Court refuses any hard and fast rule for determining the invalidity of a contract as against public policy. *W.J. Seufert Land Co. v. Greenfield*, 262 Or. 83, 496 P.2d 197, 200 (1972). The test is the evil tendency posed by the type of contract in general and not its actual injury to the public in a particular instance. *W.J. Seufert Land Co. v. Greenfield*, 496 P.2d 197, 200 (1972).

When assessing the validity of a contract or contractual provision, all courts naturally identify the policy forwarded by the party challenging the contract and then ascertain the reasons behind the policy. The policy often arises from a statute, such as a statute of limitations.

Statutes of limitation are passed to promote the general welfare. *Evans v. Finley*, 166 Or. 227, 111 P.2d 833, 837 (1941). The policy behind the limitation is to require suits to be brought in due season and to discourage stale demands to the prejudice of the defending party. *Evans v. Finley*, 111 P.2d 833, 837 (1941); *Mitchell v. Campbell*, 13 P. 190, 192 (1886). Statutes of limitation create a procedural device for establishing a point of repose for past actions and for ensuring that the search for truth is not impaired by the loss of evidence whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise. *Godoy v. Wells Fargo Bank, NA*, 575 S.W.3d 531, 538 (Tex. 2019); *Childs v. Haussecker*, 974 S.W.2d 31, 38-39 (Tex. 1998). In addition to affording comfort and rest to the defendant, statutes of limitation protect the courts and the public from the perils of adjudicating stale claims. *Godoy v. Wells Fargo Bank, NA*, 575 S.W.3d 531, 538 (Tex. 2019). Statutes of limitations express a societal interest or public policy of giving repose to human affairs. *Bank of New York Mellon v. WMC Mortgage, LLC*, 151 A.D.3d 72, 56 N.Y.S.3d 1, 4 (2017); *Haggerty v. Williams*, 84 Conn. App. 675, 855 A.2d 264, 268 (2004).

Oregon entered the Union thirty years before Washington's statehood. The ancient decision, *Mitchell v. Campbell*, 14 Or. 454, 13 P. 190 (1886) directly addresses the validity of contract waivers of the defense of the statute of limitations. The Oregon Supreme Court wrote that a contract not to plead the statute of limitations clearly appears to be an agreement in violation of public policy. *Mitchell v. Campbell*, 13 P. 190, 192

(1886). The Oregon Supreme Court, in *Mitchell*, analogized a waiver of the statute of limitations to an agreement forgoing the defense of usury. The right to make each of the defenses is not only a private right to the individual, but it is founded on public policy, which is promoted by asserting the defense and contravened by one's refusal to make it. The Oregon Supreme Court has never overruled *Mitchell v. Campbell*.

Oregon follows the majority rule that a waiver of the defense of the statute of limitations violates public policy. In an appendix, we list the many states, wherein courts have refused to enforce statutes of limitations waivers.

According to jurisdictions, other than Oregon, an anticipatory waiver of the statute of limitations will not be enforced as contravening public policy against stale suits. While parties may waive many statutory and even constitutional rights, a statute of limitations is not solely a right belonging to the party asserting it. *Godoy v. Wells Fargo Bank, NA*, 575 S.W.3d 531, 538 (Tex. 2019). Therefore, an agreement in advance to waive or not plead the statutes of limitation is void as against public policy. *Godoy v. Wells Fargo Bank, NA*, 575 S.W.3d 531, 537 (Tex. 2019); *Simpson v. McDonald*, 142 Tex. 444, 179 S.W.2d 239, 243 (1944). Parties may agree to shorten the time period but may not agree at the inception of the contract to extend the statute of limitations because a party cannot in advance, make a valid promise that a statute founded in public policy shall be inoperative. *Bank of New York Mellon v. WMC Mortgage, LLC*, 56 N.Y.S.3d 1, 5 (2017); *Kentucky River Coal & Feed Co. v. McConkey*, 271 Ky. 261, 111 S.W.2d 418,

419 (1937). A waiver at the inception of the contract is generally the result of ignorance, improvidence, unequal bargaining positions, or simply unintended. *John J. Kassner & Co. v. City of New York*, 46 N.Y.2d 544, 551, 389 N.E.2d 99, 415 N.Y.S.2d 785 (1979).

One foreign court expressed fear that to uphold the validity of such waivers in the original contract would result in the waivers being inserted in every promissory note and similar instrument as a matter of routine. *Haggerty v. Williams*, 855 A.2d 264, 269 (Conn. App. 2004). Any statute imposing a limitation of time for suing on a contract would be annihilated. *Haggerty v. Williams*, 855 A.2d 264, 269 (2004); *Hirtler v. Hirtler*, 566 P.2d 1231, 1231-32 (Utah 1977).

In addition to public policy precluding the lengthening of the statute of limitations, public policy precludes contract provisions that delay the accrual of the running of the limitation period since this delay would also lengthen the time. Thus, the parties cannot agree at the inception of the contract to delay the running of a limitations period. *Bank of New York Mellon v. WMC Mortgage, LLC*, 56 N.Y.S.3d 1, 5 (2017); *John J. Kassner & Co. v. City of New York*, 46 N.Y.2d 544, 551, (1979); *Haggerty v. Williams*, 855 A.2d 264, 269 (Conn. App. 2004).

The Texas courts have created one exception to the prevailing view of voiding a waiver of the statute of limitations. The Texas courts will enforce a waiver when the contact substitutes a specific and reasonable time for the accrual or running of the limitation period. *Godoy v. Wells Fargo Bank, NA*, 575 S.W.3d 531, 533 (Tex. 2019);

*American Alloy Steel, Inc. v. Armco, Inc.*, 777 S.W.2d 173, 177 (Tex. App. 1989). The

agreement must be for a pre-determined length of time. *Duncan v. Lisenby*, 912 S.W.2d

857, 859 (Tex. App. 1995).

In *Godoy v. Wells Fargo Bank NA*, the Texas Supreme Court held enforceable one

portion of a contractual waiver that resulted only in the substitution of a four-year

limitations period for a two-year period rather than the abandonment of all limitations.

The court ruled that the substitution was sufficiently specific. The waiver in Charles

Gunzel's commercial guaranty lacked any firm ending date, however. The Texas

Supreme Court, in *Godoy v. Wells Fargo Bank NA*, nullified another portion of the

contractual waiver that read similarly to Gunzel's waiver.

In *Godoy v. Wells Fargo Bank NA*, 575 S.W.3d 531, 533-34, guarantor Gerald

Godoy agreed to:

> waives any and all rights or defenses arising by reason of . . . any
> statute of limitations, if at any time any action or suit brought by Lender
> against Guarantor is commenced, there is outstanding indebtedness of
> Borrower to Lender which is not barred by any applicable statute of
> limitations.

The Texas court held the provision to be unenforceable because the provision lacked

specificity or a limit to a reasonable time. If the debtor periodically paid a small amount

on the debt, no limitation period might ever apply to the guaranty.

Because of the language of the commercial guaranty signed by Charles Gunzel,

Umpqua Bank argues that the document did not create a prospective waiver of the statute

of limitations. Rather the language functioned as a retrospective delay in the accrual date for the limitation period. Nevertheless, the language functioned as a prospective partial waiver. *Godoy v. Wells Fargo Bank* teaches that regardless of how a lender wishes to characterize such language, a court should void the partial waiver.

Umpqua Bank relies on *W.J. Seufert Land Co. v. Greenfield*, 262 Or. 83, 496 P.2d 197 (1972). In *Seufert*, the guarantor argued that a clause, under which he agreed not to assert any defenses to an action to enforce the guaranty, voided the entire guaranty. The court ruled that, assuming the waiver invalid, the guaranty still was enforceable. Instead, such a contract provision is only invalid when urged as a bar against a defense which may not be legally contracted away. The court upheld the validity of an agreement between a creditor and a guarantor which could limit or destroy a right of subrogation in the guarantor against the debtor. The decision does not address a statute of limitations provision in a contract.

Umpqua Bank also contends that *State v. Huttenbauer*, 301 Or. App. 332, 456 P.3d 340 (2019) supports the proposition that a party can waive the protections of a statute of limitations. We disagree. In *Huttenbauer*, the court ruled that no statute of limitations runs against a debt owed to a state agency.

Despite its commercial guaranty reading to the contrary, Umpqua Bank asks us to apply Washington law to the defense of the statute of limitations. Umpqua Bank cites

*J.A. Campbell Co. v. Holsum Baking Co.*, 15 Wn.2d 239, 255, 130 P.2d 333 (1942),

wherein the Washington Supreme Court wrote:

> Unless inhibited by some statutory provision, an agreement to waive the statute of limitations, *made after the statute has commenced to run but before it has fully run*, is valid and binding upon the parties if it is *supported by a sufficient consideration and is for a definite period of time*.

(Emphasis added.)  This rule helps the bank none.  Umpqua Bank gave no additional

consideration for the waiver.  The waiver was not for a definitive time limit.

We recognize the oddity of our holding the modification of the statute of

limitations found in Charles Gunzel's commercial guaranty void because of its nature as

a waiver when, if Umpqua Bank had reworded the governing sentence, we might uphold

the modification.  We might uphold the contractual modification if it read that the

limitation period for any suit to enforce the obligation on the guaranty shall not

commence to run until the last payment on the debt or guaranty made by the lender or the

guarantor.  As already analyzed, this latter language is not in the form of a waiver.

Oregon law generally upholds a contract change to the statute of limitations.  Thus, our

ruling may promote form over substance, because the same result follows from our

hypothetical language as from the actual language in the guaranty.

Umpqua Bank could argue our distinction between a contract modification and a

waiver is not fair because we foster form over substance.  Nevertheless, Charles Gunzel

could argue the opposite.  If the commercial guaranty employed our hypothetical

21

language and we upheld the validity of the contractual modification, Gunzel could argue unfairness since the hypothetical language in essence operated as a waiver that is void against public policy. Umpqua Bank controlled the language placed in the commercial guaranty and could have reworded the language if it so chose.

We recognize that the commercial guaranty also read that Charles Gunzel warranted that the statute of limitations waiver was reasonable and did not violate public policy. Nevertheless, Umpqua Bank cites no law that supports a conclusion that a party may not rely on public policy invalidating a contract waiver if that party declared the reasonableness of the waiver in the contract or declared the waiver to conform to public policy. In the following sentence in the commercial guaranty, Umpqua Bank recognized the possibility of public policy voiding the waiver. Financial institutions could annihilate the legislature's statute of limitations by always placing such warranty clauses in loan and guaranty documents. *Haggerty v. Williams*, 855 A.2d 264, 269 (Conn. App. 2004); *Hirtler v. Hirtler*, 566 P.2d 1231, 1231-32 (Utah 1977).

Umpqua Bank complains that, under our ruling, the sole shareholder of a corporation that guarantees the corporate debt could string a bank along with periodic payments from the corporate debtor long enough to release himself or herself form the guaranty by the passing of the statute of limitations. Admittedly, this fear could come to fruition although we do not know if Charles Gunzel operated under this sophisticated motivation. Regardless a sophisticated financial institution such as Umpqua Bank could

22

protect itself from such conduct. Umpqua Bank remained free to file suit against Charles Gunzel at any time after the first default by Cornerstone. Also, the law does not preclude a waiver of the statute of limitations once the limitation period commences to run. Umpqua Bank could have insisted that Gunzel sign a waiver, after the default by Cornerstone, in exchange for withholding suit.

Equitable Estoppel

Umpqua asks that, if we refuse to enforce the partial waiver of the statute of limitations, we estop Charles Gunzel from denying the commercial guaranty's validity, because he accepted the benefits of the loans and extensions of credit to Cornerstone, for which he was the founder and president. In Oregon, a party may be equitably estopped from invoking a statute of limitations defense in certain circumstances. *Donohoe v. Mid-Valley Glass Co.*, 84 Or. App. 584, 735 P.2d 11, 12 (1987). To constitute an equitable estoppel, or estoppel by conduct, (1) there must be a false representation, (2) the representation must be made with knowledge of the facts, (3) the other party must have been ignorant of the truth, (4) the representation must have been made with the intention that it should be acted on by the other party, and (5) the other party must have been induced to act upon it. *Donohoe v. Mid-Valley Glass Co.*, 735 P.2d 11, 12 (1987).

Umpqua Bank does not present evidence, let alone contend, that Charles Gunzel uttered any false representation. Thus, the bank satisfies none of the five elements of equitable estoppel.

We recognize that, under the commercial guaranty, Charles Gunzel warranted that the statute of limitations waiver was reasonable and in conformance with public policy. Nevertheless, Umpqua Bank does not rely on this purported representation when arguing estoppel. Umpqua Bank also does not cite authority that supports a conclusion that a party may not rely on public policy invalidating a contract waiver if that party declared the reasonableness of the waiver or its conformance with public policy in the contract.

Attorney Fees

Both parties request an award of reasonable attorney fees and costs on appeal. In addition, Charles Gunzel requests that this court instruct the trial court to award him attorney fees and costs incurred before the trial court. Despite language in the commercial guaranty to the contrary, both parties ask that we apply Washington law to the question of attorney fees and costs.

RAP 18.1 governs the award of attorney fees and expenses on appeal, and states:

> (a) Generally. If applicable law grants to a party the right to recover reasonable attorney fees or expenses on review before either the Court of Appeals or Supreme Court, the party must request the fees or expenses as provided in this rule, unless a statute specifies that the request is to be directed to the trial court.

(Boldface omitted.) The parties' commercial guaranty contained an attorney fee provision, allowing Umpqua to recover attorney fees and costs incurred by enforcement of the agreement. Nevertheless, a Washington statute transforms such a one-sided attorney fees clause into a bilateral provision. RCW 4.84.330 declares:

24

> In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorneys' fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, *whether he or she is the party specified in the contract or lease or not*, shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements.

(Emphasis added.)

Since we declare void the delay in the accrual of the limitation period found in the commercial guaranty and since the statute of limitations bars Umpqua Bank's suit against Charles Gunzel, Gunzel has successfully defended against Umpqua's suit for collection of the debt. Since Gunzel prevails, we award him reasonable attorney fees and costs incurred on appeal and before the trial court. Since the trial court is better suited to determine the reasonableness of the fees before it, we remand to the superior court to award a reasonable sum of fees and costs to Gunzel for both the appeal and the superior court litigation. Judgment should then be entered for Gunzel in that amount.

CONCLUSION

We reverse the superior court. We hold invalid the partial waiver of the statute of limitations in Charles Gunzel's commercial guaranty agreement. We rule that the statute of limitations bars Umpqua Bank's suit against Gunzel on the guaranty. We remand to

25

the superior court to enter judgment in favor of Gunzel for a reasonable sum of attorney

fees and costs incurred by Gunzel both before the trial court and on appeal.

_____
Fearing, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Staab, J.

No. 37400-9-III
*Umpqua Bank v. Gunzel, III*


Appendix

Alaska - *Fireman's Fund Ins. Co. v. Sand Lake Lounge, Inc.*, 514 P.2d 223 (1973).

Arizona - *Ross v. Ross*, 96 Ariz. 249, 252, 393 P.2d 933 (1964); *Forbach v. Steinfeld*, 34 Ariz. 519, 526, 273 P. 6, 9 (1928).

Arkansas - *First National Bank of Eastern Arkansas v. Arkansas Development Finance Authority*, 44 Ark. App. 143, 146, 870 S.W.2d 400 (1994).

Colorado - *First National Bank of Junta v. Mock*, 70 Colo. 517, 203 P. 272 (1921).

Connecticut - *Haggerty v. Williams*, 84 Conn. App. 675, 680, 855 A.2d 264 (2004); *Beebe v. Town of East Haddam*, 48 Conn. App. 60, 67, 708 A.2d 231 (1998).

Kentucky - *Kentucky River Coal & Feed Co. v. McConkey*, 271 Ky. 261, 111 S.W.2d 418 (1937); *Bates' Administrator v. Lockery*, 241 Ky. 498, 44 S.W.2d 589, 590 (1931).

Maryland - *Ahmad v. Eastpines Terrace Apartments, Inc.*, 200 Md. App. 362, 28 A.3d 1, 7 (2011).

Massachusetts - *National Bond & Investment Co. v. Flaiger*, 322 Mass. 431, 434, 77 N.E.2d 772 (1948).

Mississippi - *Crane v. French*, 38 Miss. 503, 532 (1860).

Nebraska - *Dunlop Tire & Rubber Corp. v. Ryan*, 171 Neb. 820, 825–26, 108 N.W.2d 84 (1961).

New Hampshire - *West Gate Village Association v. Dubois*, 145 N.H. 293, 761 A.2d 1066 (2000).

New York - *Bank of New York Mellon v. WMC Mortgage, LLC*, 151 A.D.3d 72, 78, 56 N.Y.S.3d 1 (2017); *John J. Kassner & Co., Inc. v. City of New York*, 46 N.Y.2d 544, 551, 389 N.E.2d 99, 415 N.Y.S.2d 785 (1979).

Ohio - *Alliance First National Bank v. Spies*, 158 Ohio St. 499, 501, 110 N.E.2d 483 (1953).

Texas - *Godoy v. Wells Fargo Bank, NA*, 575 S.W.3d 531, 538 (Tex. 2019); *Simpson v. McDonald*, 142 Tex. 444, 450, 179 S.W.2d 239, 243 (1944); *Duncan v. Lisenby*, 912 S.W.2d 857, 859 (Tex. App. 1995); *Squyres v. Christian*, 253 S.W.2d 470, 472 (Civ. App. 1952).

Utah - *Hirtler v. Hirtler*, 566 P.2d 1231, 1231 (Utah 1977).

A purported waiver of the defense in the future is void and unenforceable as contrary to public policy. 51 AM. JUR. 2D *Limitation of Actions* § 349 (2011).